Lauro ACEVES and Jamie
Aceves, Plaintiffs,

v.

ALLSTATE INSURANCE COMPANY,
Defendant.

No. 91–0461–GT(CM).

United States District Court,
S.D. California.

May 21, 1993.

Theresa Castagneto McAteer and Michael D. Osteen, Schall, Boudreau & Gore, San Diego, CA, for plaintiffs, Lauro and Jamie Aceves.

Peter H. Klee and Marc J. Feldman, Luce, Forward, Hamilton & Scripps, San Diego, CA, for defendant, Allstate Ins. Co.

## ORDER AND MEMORANDUM DECISION

GORDON THOMPSON, Jr., District Judge.

The above-captioned case came on for hearing on April 26, 1993 at 10:30 a.m., in Courtroom 1 of the above-entitled court, the Honorable Gordon Thompson, Jr., presiding. Theresa Castagneto McAteer of Schall, Boudreau & Gore, Inc., appeared on behalf of plaintiffs; Peter H. Klee of Luce, Forward, Hamilton & Scripps appeared on behalf of defendant. The Court has fully considered this matter, including review of the papers filed by the parties, the authorities cited therein, and the arguments presented.

### FACTUAL BACKGROUND

1. *The Injury to Plaintiffs' Home*

In 1978, plaintiffs, Lauro and Jamie Aceves, purchased the home that is the subject of this action. During their first year in the new residence, plaintiffs noticed that the front door began sticking. They contacted McMillan Homes ("McMillan"), the builder of the house, who repaired the door. However, the door continued to stick and plaintiffs repeatedly had McMillan repair the problem. Unfortunately, the door was not the only problem discovered by plaintiffs with their new home. During their first two years in the home, McMillan was also called upon to patch cracks in the drywall on several occasions and to replace the cracked entry way tile with a new wood parquet floor. By 1981, plaintiffs had become aware of the losses that are the basis of the insurance claim in the present litigation.

2. *Allstate's Conduct Following Notification*

Although plaintiffs became aware of the loss in 1981 and although plaintiffs' insurance policy contained a one-year limitation provision barring any suit or action against Allstate more than one year after a loss, plain-

tiffs did not notify Allstate of the subject loss until August 1985. Thereafter, Allstate investigated the loss, confirmed coverage fully aware that the claim was over a year old,[1] made an offer to settle and did not reserve any of its rights under the contract.

Notwithstanding Allstate's repeated express affirmations of coverage beginning in August 1985 and notwithstanding Allstate's failure to reserve its right to dispute coverage and limitations issues, Allstate requested a coverage letter to determine if it had to pay on this claim four years later, in 1989. An initial coverage letter on January 12, 1990 (the "January coverage letter"), recommended that Allstate continue to offer coverage. The January coverage letter, however, did raise some issue as to whether Allstate might not be required to cover the damage. On July 12, 1990, a second coverage letter (the "July coverage letter") modified the earlier recommendation. The new recommendation was based on an interpretation of a recently decided California appellate court case, in addition to the cases discussed in the January coverage letter. The July coverage letter recommended that Allstate now deny coverage on the theory that the claim had been filed after the expiration of the policy limitations period and that Allstate's conduct *could not* constitute a waiver as a matter of law. On August 1, 1990, Allstate denied coverage under the policy and disapproved plaintiffs' claim.

## PROCEDURAL BACKGROUND

In addition to the facts relating to the claim and Allstate's conduct, some elaboration on the procedural history of this case is relevant, in addition to further explaining the posture in which these motions come before the court.

1. At the time Allstate confirmed coverage, Allstate acknowledged that the loss occurred at some point in 1983 or earlier—more than a year prior to notice.

2. The most compelling of the three cases found by the court was *Intel Corp. v. Hartford Acc. & Indemnity Co.*, 952 F.2d 1551 (9th Cir.1991), where the Ninth Circuit stated that in "cases where waiver has been found, there is generally some element of misconduct by the insurer or detrimental reliance by the insured." *Id.* at

In March 1991, plaintiffs filed suit in the Superior Court of California. Thereafter, in April 1991, Allstate removed the action to this court. In February 1992, the court denied Allstate's *motion for summary judgment* (the "1992 Order"). At that time, the court made the following specific findings:

(1) that for purposes of the one-year limitation provision, the inception of the loss occurred in 1981,

(2) that there can, as a matter of law, be a waiver after the limitations period has run, and

(3) that based on the undisputed facts in this case, that such a waiver occurred.

Subsequently, the parties requested interlocutory review on the issue of when the inception of loss occurred and whether there could be a waiver after the limitations period had run. The court granted the petition for certification for interlocutory review, but the Ninth Circuit returned the case without any ruling on the merits.

Allstate then filed a motion for partial summary adjudication that its conduct in denying coverage was reasonable and in good faith. Allstate also requested the dismissal of plaintiffs' tort claim of bad faith. On March 1, 1993, at the hearing on this motion, the court issued its oral ruling on this motion, granting the motion in part and denying the motion in part. The court found that the denial of coverage was reasonable, but that such a finding did not require the dismissal of plaintiffs' tort claim.

In the subsequent preparation of the written order related to the March 1, 1993 hearing, the court discovered several cases that appeared to suggest that the 1992 Order did not represent the correct interpretation of California law.[2] None of these cases had

1559. Subsequently, two California appellate court cases have favorably cited the Ninth Circuit's interpretation in *Intel* that California insurance law requires a showing of detrimental reliance in order to establish a waiver. *See Garcia v. Calfarm Ins. Co.*, 12 Cal.App.4th 999, 1009, 7 Cal.Rptr.2d 504 (April 1992) and *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 86 n. 7, 9 Cal.Rptr.2d 894 (July 1992). The court has since learned that the opinion in *Garcia* was ordered withdrawn by the California Supreme Court which is presently

previously been brought to the court's attention, and the court was until that time unaware of any of these cases. Because of the apparent relevance of these cases to the viability of plaintiffs' contract claim, the court ordered further briefing on the following three issues:

I. Whether, fourteen months later, the court *may* or *must* reconsider its prior ruling based on the discovery of new case law not previously presented to the court by the parties.

II. Assuming the court does reconsider its prior ruling, whether the new case law *mandates* that the court reverse its earlier pronouncement that there can be a waiver of a policy limitations period after the period has expired.

III. Assuming that there cannot be a waiver and that the underlying contract claim is dismissed, whether conduct that occurred *prior* to the newly discovered case law can still be determined to be in bad faith.

The parties rebriefed these issues. Accordingly, this order and memorandum decision reconsiders (1) the ruling the court made in 1992 Order that there can be a waiver after the statute of limitations has expired and (2) the court's oral ruling on March 1, 1993 that dismissal of the entire tort claim was not warranted. This order also reinstates and provides reasons for the court's oral ruling on March 1, 1993 that granted partial summary adjudication with respect to Allstate's decision to terminate coverage.

### CONCLUSIONS OF LAW

#### I. RECONSIDERATION

■ A district court retains the jurisdiction to modify or rescind an interlocutory order, such as the prior summary judgment orders in this case. *See* Federal Rule of Civil Procedure 54(b); 1B *Moore's Federal Practice* §§ 0.404[1] and 0.404[4.–1]. (1992). In the present case, subsequent to the prior interlocutory order denying defendant's motion for summary judgment, there has been a significant change in the Ninth Circuit law. As a result, the court finds it both appropri-

considering an appeal in that case. *See* 11 Cal.

ate and necessary to review its prior holdings in light of the new case law.

#### II. THE NINTH CIRCUIT'S VIEW OF CALIFORNIA LAW ON INSURANCE WAIVERS FOLLOWING INTEL

As a matter of judicial hierarchy, the Ninth Circuit must follow California's interpretation of California law. Likewise, this court must follow the Ninth Circuit's interpretation of how the California Supreme Court has or will interpret an issue of law. As a result, although the court does not believe that the interpretation of the law as set forth in *Intel Corp. v. Hartford Acc. & Indemnity Co.*, 952 F.2d 1551 (9th Cir.1991), is a proper interpretation of the question of "what is required for a waiver in the insurance context," the court cannot disregard relevant Ninth Circuit authority.

The court's prior order rested on an interpretation of the waiver doctrine. Following the Ninth Circuit's ruling in *Intel*, it is no longer possible to discuss the waiver doctrine in insurance cases. The doctrine no longer exists. If there is nothing that is more disappointing about the decision in *Intel*, it is that the court did not acknowledge that it had *eliminated* the waiver doctrine by requiring insureds to make a showing similar to that required for the doctrine of estoppel. In effect, the waiver doctrine is no longer independent of estoppel, but instead is merely a subset of this previously distinct doctrine. Without actually saying what it was doing, *Intel* accomplished this elimination of the waiver doctrine in insurance cases by concluding that the distinction between waiver and estoppel in the insurance context had become "blurred." *Intel*, 952 F.2d at 1559. Accordingly, the court held that waivers must satisfy the same requirements as the doctrine of estoppel—namely that there must be "some element of misconduct by the insurer or detrimental reliance by the insured." *Id.* Because there was no evidence that the insurer had misled the insured and because the insured had not shown that it was prejudiced, *Intel* held that the district court "should not have found [insurer] waived reli-

Rptr.2d 1, 834 P.2d 695 (1992) (review granted).

ance on [the policy provision at issue]." *Id.* at 1561.[3]

Unfortunately, at least in this court's opinion, *Intel* has subsequently been favorably cited by the California Appellate Court. ` See *Garcia v. Calfarm Ins. Co.*, 12 Cal.App.4th 999, 1009, 7 Cal.Rptr.2d 504 (April 1992) (opinion depublished by California Supreme Court); *B & E Convalescent Center v. State Compensation Ins. Fund*, 8 Cal.App.4th 78, 86 n. 7, 9 Cal.Rptr.2d 894 (1992). Neither of these cases provided any substantial reasoning or analysis of California law, but rather accepted the *Intel* proposition without further comment. Without questioning the significance of the favorable citation to *Intel*, the fact still remains that the California Supreme Court has not yet addressed the issue nor has any California court specifically analyzed the question of whether the doctrine of waiver, separate and distinct from the doctrine of estoppel, requires a showing of detrimental reliance. Hopefully, when this issue is ultimately resolved by the California courts, it will be in a thoughtful opinion with explanation, and not merely the acceptance of the Ninth Circuit's review in *Intel*.

### III. *THE IMPACT OF INTEL'S NEW LAW ON THE BREACH OF CONTRACT CLAIM*

As indicated previously, the court, duty-bound by judicial hierarchy, will apply the waiver doctrine enunciated by *Intel* to the present case. For the reasons that follow, specifically that the court holds that *Intel* marks a change in the interpretation of the waiver doctrine as applied to insurance cases, the court holds that plaintiffs have satisfied *Intel*'s new requirement of detrimental reliance.

### A. *INTEL Marks A Change In The Interpretation Of The Waiver Doctrine As Applied To Insurance Cases*

### 1. *INTEL Does Not Preclude The Finding That There Has Recently Been A Change in The Requirements for A Waiver in California Insurance Cases*

An isolated reading of *Intel* might suggest that the Ninth Circuit did not view its decision as changing the interpretation of California law. In fact, one of only two California cases cited by *Intel* for the proposition that waivers require detrimental reliance was *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980). If *Miller* stands for the proposition cited by *Intel*, one interpretation is that *Intel* held that waivers in insurance cases under California law have required reliance since at least 1980. On this point, however, the court does not feel duty-bound to follow *Intel*. Importantly, it was only nine months prior to *Intel* that a different panel of the Ninth Circuit (the opinions of which the court is likewise duty-bound to honor) acknowledged, albeit in dicta, a rule one-hundred eighty degrees contrary to *Intel*. Specifically, in *Hydro Systems, Inc. v. Continental Ins. Co.*, 929 F.2d 472, 476 (9th Cir.1991), three other judges of the Ninth Circuit recognized the distinction between waiver and estoppel (even in insurance cases), stating that " 'reliance or prejudice on the part of the insured' is not necessary." *Id.* at 476.[4] Although the court feels bound to honor the conclusion reached in *Intel* be-

---

**3.** Although *Intel* 's discussion of whether a waiver requires detrimental reliance was not insubstantial or cursory, *Intel* did not need to address the waiver issue as the opinion later held that the policy provision in question was inapplicable. *See* 952 F.2d at 1561–62. As a result, it is at least arguable that *Intel* 's elimination of the waiver doctrine in the insurance context was dicta, and thus not binding on this court. Because the court believes that plaintiffs have satisfied the *Intel* rule in any event, the court will not avoid the apparent mandate of *Intel*.

**4.** In support for its conclusion that detrimental reliance is not required for waivers, even in insurance cases, *Hydro Systems* favorably cited the lower court opinion in *Intel Corp. v. Hartford Acc. & Indemnity Co.*, 692 F.Supp. 1171, 1180 (N.D.Cal.1988), which was subsequently reversed by this other panel of the Ninth Circuit. Under such circumstances, it is at least arguable that there is presently a split in the Ninth Circuit on the question of how California courts are interpreting California law on this issue. Indeed, without great speculation, it is possible to conceive a different rule in the Ninth Circuit had *Intel* been decided by the same panel that decided *Hydro Systems*. As such, the issue is ripe for review by the Ninth Circuit *en banc* in the event that the California Supreme Court fails to offer further guidance.

cause of that panel's more elaborate discussion of the waiver issue, the decision in *Hydro Systems* at a minimum suggests an unresolved area of California law, if in fact not a contrary rule. As a result, the court must determine whether there has been a change in the law, in order to determine whether plaintiffs can show detrimental reliance as a result of Allstate's previous willingness to provide coverage on these claims.[5]

### 2. *This Court's Interpretation of the Law Prior to the Mandate of Intel*

It certainly comes as no surprise to the parties that prior to *Intel*, the court would have held that there could be a waiver of a policy limitations period without detrimental reliance or other misconduct. The court in fact did so find when it addressed the issue in the 1992 Order.

### a. *Waiver is the Voluntary Act of One Party Only and Does Not Require Detrimental Reliance*

 Prior to *Intel*, a California District Court's analysis of California law would properly have concluded that a waiver does not require detrimental reliance. As a result, there could be a waiver of a policy limitation period, even after the expiration of the limitations period. Importantly, under general principles of California law, a valid waiver requires only that an insurer intentionally relinquish its right to rely on the limitations provision. *See Prudential–LMI Com. Ins. v. Superior Court*, 51 Cal.3d 674, 689, 274 Cal. Rptr. 387, 798 P.2d 1230 (1990). Alternatively stated, a fundamental aspect of a waiver is that a waiver is the "voluntary relinquishment, expressly or impliedly, of a known right and *depends upon the intention of one party only.*" *Morgan v. International Aviation Underwriters, Inc.*, 250 Cal.App.2d 176, 180, 58 Cal.Rptr. 164 (1967) (emphasis added). Indeed, California law appears well-settled that a waiver is a unilateral act that does not require reliance. *See, e.g., Rubin v. Los Angeles Fed. Sav. & Loan Assn.*, 159 Cal.App.3d 292, 298, 205 Cal.Rptr. 455 (1984)

("detrimental reliance is not a necessary element of waiver, only of estoppel"). *See also Hospital Computer Systems v. Staten Island Hosp.*, 788 F.Supp. 1351, 1357 (D.N.J.1992) (interpreting New York law, court held that a "party need not prove detrimental reliance to establish waiver.").

Equally important, the California law as set forth above also comports with more general statements about the waiver doctrine as described in several major treatises. A thorough and careful review of these authorities further supports the suggestion that a waiver does not require detrimental reliance. For example, *Farnsworth on Contracts* states:

> A party that, without consideration, has waived a condition that is within the other party's control *before* the time for occurrence of the condition has expired, can retract the waiver and reinstate the condition unless the other party has relied to such an extent that retraction would be unjust.... However, a party that has waived a condition *after* the time or occurrence of the condition has expired is subject to a dramatically different rule, one that has been influenced by the concept of election.
>
> The word *election* signifies a choice, one that is often binding on the party that makes it.... Courts often hold that a party that chooses to disregard the nonoccurrence of a condition is bound by an election to treat the duty as unconditional; that party cannot reinstate the condition even if the other party *has not relied on this choice.*

II *Farnsworth on Contracts* § 8.5, 377–78 (1990) (citations omitted) (emphasis added). *See also* 3A *Corbin on Contracts*, § 759 at 513 (1960) ("The requirement of notice is usually for the convenience or protection of the promisor; but, whether the condition is express or constructive, it is practically never a substantial part of the consideration constituting the agreed equivalent of the promised performance. Therefore, the condition of notice can be eliminated by a

---

5. The court is also hopeful that this review of the case law will prove helpful to the California Supreme Court when it finally confronts this issue, or alternatively when the issue is faced by another panel on the Ninth Circuit or by the Ninth Circuit *en banc.*

voluntary waiver of the promisor, *either before or after the time when the notice is due.*") (emphasis added) (citations omitted). It cannot be disputed that the "election" waiver described by Farnsworth accurately describes California's general requirement that a waiver does not require detrimental reliance.

b. *Principles of Waiver Are Applicable in Insurance Cases*

Unfortunately, despite the clarity of the aforementioned principles in California law, the court has not found a case *that has held* that a waiver in an insurance case does not require reliance.[6] Cases such as *Rubin v. Los Angeles Fed. Sav. & Loan Assn.*, 159 Cal.App.3d 292, 205 Cal.Rptr. 455 (1984), are not insurance cases. As a result, at least prior to *Intel*, there existed, at a minimum, an arguable issue as to whether the doctrine of waiver might be interpreted differently in insurance cases than it is in all other situations. Continuing to review the issue pre-*Intel*, the court would have refused to entertain such a major embarkment from established waiver principles (1) given the lack of specific direction from the California courts and (2) given the support in major treatises for the suggestion that the waiver rule is no different in insurance law than it is in contract law.

Throughout this opinion, the court has alluded to and specifically pointed out the lack of direction from the California courts on the issue of whether insurance waivers require detrimental reliance. The court's research has presented no California case that has eliminated the waiver doctrine from insurance cases in the manner that *Intel* did. Moreover, although the court will return later to address the significant cases cited by Allstate, cases such as *Prudential–LMI Com. Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), and *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739, 161 Cal.Rptr. 322 (1980), suggest a result contrary to *Intel*, namely that waivers do not require detrimental reliance just because they occur in the insurance setting. In fact, *Miller* would appear to stand for precisely the opposite conclusion than it was cited for by *Intel*. Specifically, the *Miller* court rejected the insurer's third contention on appeal that there had not been a waiver. The *Miller* court restated the basic principles of the waiver doctrine, and recognized that waivers do exist in insurance cases, complete and distinct from principles of estoppel. *Id.* at 753–56, 161 Cal.Rptr. 322. Specifically, the court held: "An insurer can waive policy provisions which would otherwise defeat coverage," and that the insurer had waived such provisions when it "created the impression that there was no coverage dispute." *Id.* at 754, 161 Cal.Rptr. 322. Contrary to the implication suggested by *Intel*, there was no indication or finding of detrimental reliance with respect to the *Miller* court's analysis of the third contention on appeal—namely the waiver.[7]

---

**6.** The court does not include in this assertion a recent opinion from the California Supreme Court which states: "It is settled law that a waiver exists whenever an *insurer* intentionally relinquishes its right to rely on the limitations provision." *Prudential–LMI Com. Ins. v. Superior Court*, 51 Cal.3d 674, 679, 798 P.2d 1230 (1990) (emphasis added). Clearly, this unequivocal statement (which was not addressed in *Intel*) does not make any mention of any requirement of detrimental reliance (or any other requirement for that matter) for a valid waiver in an insurance case. Properly distinguished, *Prudential–LMI* was decided on estoppel grounds and thus not a Supreme Court holding on the waiver issue. At the same time, however, the language (in the text of the opinion itself) would appear to indicate that the California Supreme Court, contrary to *Intel*, believes that insurance waivers do not require detrimental reliance.

**7.** Notably, the fourth contention on appeal in *Miller* addressed the issue of estoppel. In addressing this fourth contention, the *Miller* court indicated that detrimental reliance was a necessary element *for estoppel* and in fact found such detrimental reliance in finding that the insurer was estopped from asserting its coverage defenses. *Miller*, 100 Cal.App.3d at 754–56, 161 Cal. Rptr. 322.

The most significant aspect of the analysis in *Miller* is that the court had to address both the argument of waiver and the argument of estoppel. The court addressed these issues separately, and recognized that there are different requirements for the two doctrines, *even in insurance cases.*

In addition to the absence of authority in the California cases suggesting a major modification of the waiver doctrine when it is asserted in insurance cases, there is support in major treatises for application of the waiver doctrine in insurance cases just as it is applied in other contract cases. Farnsworth, for example, discussed the impact of the above inability to retract election waivers on *insurers:*

> The parties that have most often been bound by election waivers are insurers. The insurer that chooses to engage in settlement negotiations despite the insured's failure to give timely notice of loss is likely to be precluded by its election from later resisting the claim on that ground, *even if the insured in no way relied on the election.*

II *Farnsworth on Contracts* § 8.5, 378 (1990) (emphasis added) (citations omitted). Similarly, other treatises have suggested the identical rule, and have not drawn a distinction between insurance cases and all other cases. *See* 16B Appleman, *Insurance Law and Practice,* § 9089 at 574 (1981) ("Where it is claimed that the insurer waived a forfeiture, no act by the insured is necessary, the waiver being essentially unilateral in character, and depending only on the acts and conduct of the insurer.") (citation omitted); 5 *Williston on Contracts,* 3d ed. § 741 at 514 (1961) (" 'If there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto, either expressly or by his conduct waives it or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving against it, if necessary.' This principle finds *frequent application in insurance law....*") (citations omitted) (emphasis added).

Moreover, as a policy matter, the court does not believe that continuing to recognize waivers in insurance cases leaves an insurer unprotected. The court likewise rejects Allstate's contention that allowing waivers without detrimental reliance would have the catastrophic impact discouraging insurance companies from negotiating claims. The simple fact remains that the insurer may reserve its rights if it does not desire the waiver of those rights. In the present case, Allstate could

have filed a reservation of rights letter, and accordingly there would have been no waiver as a factual matter, just like this court found in *Lally v. Allstate Ins. Co.,* 724 F.Supp. 760 (S.D.Cal.1989), affirmed, 930 F.2d 28 (9th Cir.1991).

Finally, contrary to the implication in *Intel* that the distinction between waiver and estoppel has become blurred *only* in the insurance context, *see Intel,* 952 F.2d at 1559, courts have regularly used the two terms interchangeably in other arenas. *See* 30 Cal. Jur.3d, *Estoppel and Waiver* 2 (1987) (*cited by Intel*). And yet, despite the occasionally blurred distinction between waiver and estoppel in other areas of law as well, even *Intel* does not suggest that waiver in California is now an extinct doctrine. *See Intel,* 952 F.2d at 1559 (recognizing the aforementioned principle that waiver, unlike estoppel, looks only to the act of "one side only"). Given the special relationship between the insurer and an insured, *see, e.g., Downey Sav. & Loan Assoc. v. Ohio Casualty Ins. Co.,* 189 Cal. App.3d 1072, 1096, 234 Cal.Rptr. 835 (1987) (insurer to give "at least as much consideration to the welfare of its insured as it gives to its own interests"); *McCormick v. Sentinel Ins. Co.,* 153 Cal.App.3d 1030, 1042, 200 Cal.Rptr. 732 (1984) (insurer to place insured's interests above the interests of the insurer), the court, prior to the mandate of *Intel,* would have held that it is illogical to suggest that a insurance waivers, as opposed to all other waivers, require detrimental reliance.

As a result, prior to *Intel,* the court would have found that the doctrine of waiver still existed in the insurance context, and that such waivers did not require detrimental reliance. It naturally follows from that holding that an insurer could waive a policy limitation period, even after the period had expired. In fact, it would seem that most waivers of the limitations period would occur after the term had expired, as it is only at that time that the insurer in fact has a right to assert the defense.

### c. *Just As A Party May Waive the Statute of Limitations, An Insurer May Waive A Policy Limitation Period*

In addition to the illogical line that *Intel* draws between waivers in insurance

cases and waivers in other contract cases, the court also does not find any basis for not allowing waivers of a policy limitations when California allows waivers of *the statute of limitations*. *See, e.g., Prudential–LMI*, 51 Cal.3d at 690 n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230 (suggesting, without analysis, that a policy limitation period may not be waived after the limitation period has run). There is no question that there can be a waiver of the statute of limitations. *See Brownrigg v. Defrees*, 196 Cal. 534, 541, 238 P. 714 (1925) ("The privilege conferred by the statute of limitations is not a right protected under the rule of public policy but is a mere personal right for the benefit of the individual which may be waived."). In addition, in an unrelated factual situation, at least one recent California appellate court case has stated in dicta that there can be a waiver after the statute of limitations period has expired. *See California First Bank v. Braden*, 216 Cal.App.3d 672, 676, 264 Cal.Rptr. 820 (1989) (referring to section 360.5 of the California Code of Civil Procedure, the court implied that there could be a waiver after the statute of limitations period had run). Notably, statutes of limitations provide benefit for both the defendant and the court, as opposed to the policy limitation period which ostensibly is solely for the benefit of the insurer. As a result, in addition to lack of rationale behind the elimination of waivers only in insurance cases, an appropriate recognition of the "hierarchy of limitations periods" would suggest that an insurer can waive a policy limitations period after the period has expired.

### 3. *Specific Cases Cited by Allstate Do Not Persuade the Court To Reach A Contrary Conclusion*

Without specifically contradicting any of the above reasoning, Allstate argued that several cases (prior to *Intel* ) required a different conclusion. None of these cases indicate that the above analysis is incorrect.

#### a. *Magnolia Squares*

The primary case relied on in the second coverage letter was the recently decided opinion in *Magnolia Square Homeowners Assn. v. Safeco Insurance Co.*, 221 Cal. App.3d 1049, 271 Cal.Rptr. 1 (1990). Allstate argues that this case held that "if a claim is time-barred before it is ever presented, no conduct on the part of the insurer can act as a waiver or estoppel to revive the claim." Quite simply, this is not what *Magnolia Squares* held. The court in *Magnolia Squares* wrote as follows:

> IV. WHETHER [DEFENDANT] WAIVED OR WAS ESTOPPED TO RELY UPON THE LIMITATION CLAUSE
>
> [Plaintiff] argues that [defendant] waived or was estopped to assert the 12–month limitation period because [defendant] acted to lull [plaintiff] into delaying the filing of the lawsuit. For example, [plaintiff] notes that some of [defendant's] letters to [plaintiff's] counsel did not mention the 12–month limitation period. Even if we were to conclude that an insurer could somehow be estopped from asserting the 12–month limitation period because it failed to continually advise the insured of the period, we would still reject [plaintiff's] argument because the conduct took place after the 12–month limitation period had run. [Plaintiff's] complaint, dated July 29, 1985, is the latest date the loss can be deemed to have occurred. The conduct of which [plaintiff] complains, however, occurred after July 29, 1986, and thus took place after the 12–month period had run. (citations omitted). Accordingly, *"[t]here can be no basis for an estoppel on this record."* (citation omitted).

*Id.* at 1063, 271 Cal.Rptr. 1 (emphasis added). Although the *Magnolia Squares* court appears to initially freely interchange the terms "waiver" and "estoppel", a basic principle of contract law establishes that these terms have two distinct meanings. *See, e.g.*, 16B Appleman, *Insurance Law and Practice*, § 9081 at 488 (1981) ("The terms 'waiver' and 'estoppel' have been so frequently confused and abused in decisions upon insurance law that it seems preferable to define those terms accurately in the inception of this discussion, rather than constantly to append footnote criticisms to the cases discussed subsequently"). *See also Elliano v. Assurance Co. of America*, 3 Cal.App.3d 446, 450,

83 Cal.Rptr. 509 (1970); *Halus v. San Diego County Assessment Appeals Bd.,* 789 F.Supp. 327, 328 (S.D.Cal.1992). *Magnolia Squares* is more indicative of the confusion related to the use of the terms waiver and estoppel, as opposed to a specific holding that the doctrine of waiver has now been eliminated in favor of the doctrine of estoppel. Specifically, despite the initial combined use of these terms, it is readily apparent to the neutral eye that the *Magnolia Squares* court is referring only to the theory of estoppel throughout the paragraph. For example, the word "waived" or "waiver" is not mentioned after the first sentence. Moreover, even in the first sentence where the word "waived" is used, it is apparent that the plaintiff was urging the court to adopt a theory based on estoppel, a theory that "rests upon the principle that, where 'one's conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts [or statements],' the first party cannot be permitted to repudiate his act or statement." *See id.* (*quoting Elliano v. Assurance Co. of America,* 3 Cal.App.3d 446, 450–51, 83 Cal.Rptr. 509 (1970) (*citing Bastanchury v. Times–Mirror Co.,* 68 Cal. App.2d 217, 240, 156 P.2d 488 (1945))).

### b. *Prudential–LMI*

A better, although not persuasive, argument for the elimination of insurance waivers is found in dicta in the California Supreme Court decision of *Prudential–LMI Com. Ins. v. Superior Court,* 51 Cal.3d 674, 274 Cal. Rptr. 387, 798 P.2d 1230 (1990). In footnote five, the court favorably referred to the argument that conduct by an insurer *after* a time limit has run "cannot, as a matter of law, amount to a waiver." *Id.* at 690 n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230. This footnote is not supported by any reasoning, but cites to a district court opinion from the Northern District of California. *See, e.g., Becker v. State Farm Fire and Cas. Co.,* 664 F.Supp. 460, 461–62 (N.D.Cal.1987). Aside from the issue of whether there could be a waiver as a matter of law, however, it is questionable whether the string of waiver examples in the footnote would even have supported a finding of waiver as a matter of fact.[8] At the same time, as previously stated, *Prudential–LMI* set forth the standard for a waiver without any reference to a reliance requirement. *See supra* note 6. Although the *Prudential–LMI* footnote is dicta unsupported by reasoning, it could be argued that the footnote indicates the direction in which the California Supreme Court is heading. Absent a careful and thoughtful analysis of the matter, however, it remains to be seen how the California Supreme Court will address this issue when it ultimately is presented for review. Given the magnitude of the modification subsequently adopted by *Intel,* this court would have required more than a footnote.

### c. *Lally*

Finally, Allstate refers the court to the opinion written by this court in *Lally v. Allstate Ins. Co.,* 724 F.Supp. 760 (S.D.Cal. 1989), affirmed, 930 F.2d 28 (9th Cir.1991). The issue in *Lally* could have easily been reduced to a factual one, with the ruling that defendant's conduct, accompanied as it was by a reservation of rights letter, did not constitute a waiver. *See id.* at 763 (letter stated that any activity on the part of the insured "by way of investigating or settlement ... does not constitute a waiver of any rights"). Regrettably, the court did not stop with the dispositive factual issue, but instead the court continued, concluding that there could be no waiver without reliance. The court then proceeded to apply this standard, stating that the "facts of this case show that

---

**8.** The string of waiver examples included the following conduct on the part of an insurer: "failing to cite the limitation provision when [the insurer] denies the claim, failing to advise the insured of the existence of the limitation provision, or failing to specifically plead the time bar as a defense."

Compared to the instant case, it is certainly far from clear whether any of these factual scenarios demonstrate a clear and unequivocal relinquishment of a right. Indeed, the conduct in each of these examples may or may not rise to the level of a waiver as a factual matter. Here, the conduct involved review of the claim for a period of approximately five years and repeated affirmation of coverage with some settlement offers. Clearly, as a factual matter, the conduct in the instant case rose to the level of a waiver. Allstate, aware that the claim was not presented during the first year, agreed to cover the claim anyway.

plaintiff could not have changed their position in reliance on [defendant's] alleged waiver, because the suit limitation period had already expired before they notified [defendant] of the loss and filed this action." *Id.*

Because the court did not limit its ruling, as in retrospect it should have, to merely holding that the reservation letter did not constitute a waiver, the court was faced at the earlier hearing with two undesirable options: reinforcing what it believes to be bad law or conceding that the court's own prior opinion incorrectly states the law. As the parties are aware from the 1992 Order, the court chose, albeit not in a detailed or published opinion, not to reinforce bad law. Importantly, this court's opinion in *Lally* misinterpreted language cited in Witkin, resulting in the erroneous statement that a waiver requires some reliance by the insured. To the contrary, however, Witkin acknowledges that there can be the "election waiver" discussed *infra*. As such waivers do not require reliance, an election waiver could occur even after the limitations period had expired. Indeed, the initial coverage letter written to Allstate in the instant case appeared to express a similar reaction to the *Lally* opinion, referring to it as "a recent, almost startling decision." [9]

### B. Because *INTEL* Changes the Law in this Circuit, Plaintiffs Can Satisfy *INTEL*'s requirement of detrimental reliance

The significance of the change in law relates to its impact on plaintiffs' position in this lawsuit. Specifically, *but for* the Ninth

Circuit's opinion in *Intel,* the court would still be interpreting the law in the manner that it did in the February 1992 Order, recognizing that the doctrine of waiver exists separate and apart from the doctrine of estoppel, as opposed to being a meaningless subset of the estoppel doctrine. As a result, had plaintiffs' litigation of this matter concluded prior to *Intel,* plaintiffs would not be subject to this present motion for reconsideration. To the contrary, plaintiffs would have already proceeded to trial, and prevailed or not prevailed based on the merits of their claim, as opposed to facing the real possibility at this time that the merits of their claim will not be reviewed because of the policy limitations period.

The modification of plaintiffs' position as a result of the change in law, however, satisfies the erroneous *Intel* requirement of detrimental reliance.[10] From 1985 until 1990, plaintiffs were engaged in settlement discussions with Allstate during a time period where Allstate had confirmed (without reservation) coverage of plaintiffs' claim. Plaintiffs could have, at that time, filed suit in this court to resolve their dispute with Allstate. Instead, plaintiffs continued to negotiate with Allstate to resolve their dispute over the amount that they were owed.[11] Although Allstate now argues that it is irrelevant what would have happened to plaintiffs, it is precisely because plaintiffs' position has been altered that their claim must not be dismissed.

Accordingly, the court finds prejudice and detriment to plaintiffs as a result of their reliance on Allstate's representation that it

9. The court does not at this time attempt to reconcile *Lally* with the present opinion. To the contrary, the court admits that the portion of the opinion in *Lally* stating that there could not be a waiver fell into the same trap too frequently seen by courts—confusing the doctrines of waiver and estoppel.

10. Because the court finds detrimental reliance by plaintiffs on Allstate's representations that it would confirm coverage, the court does not address plaintiffs arguments that Allstate's conduct constituted sufficient misconduct to satisfy the "misconduct" prong of the new *Intel* test.

11. As a matter of policy, settlement negotiations should be encouraged. It is certainly preferable for parties to complete their negotiations as op-

posed to rushing into court when one side first believes there may be bad faith. A rule that penalized an insured for failing to raise issues of bad faith immediately would be highly detrimental to the settlement process. *See also Frazier v. Metropolitan Life Ins. Co.,* 169 Cal.App.3d 90, 103, 214 Cal.Rptr. 883 (1985) (Prior to time when coverage is denied, plaintiff "has a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim before urging bad faith. Because it is not until [the insurer] actually denies the claim on the ground of suicide that [plaintiff] can actually ascertain whether or not [the insured] has acted in bad faith.").

had confirmed coverage despite the existence of a policy limitations period. From the immediate point when Allstate confirmed coverage onward, plaintiffs would have been able to successfully present the waiver argument under the pre-*Intel* law. Instead, they continued (as is preferable) to negotiate with Allstate. Now, post-*Intel*, plaintiffs find themselves in a significantly different position. Such circumstances require the finding that Allstate is "estopped" from asserting the policy limitations have expired.

Finally, the court does not believe that this finding is necessarily inconsistent with those cases that have recently held that a policy limitations period may not be waived. *See, e.g., Garcia v. Calfarms Ins. Co.*, 12 Cal.App. 4th 999, 1008, 7 Cal.Rptr.2d 504 (1992).[12] The court does not view this as a separate doctrine, but instead as a subset of the *Intel* doctrine. In essence, if detrimental reliance must be shown, and given that an insured cannot be induced to file late once the time period has expired, these courts have merely held that conduct following the expiration could not cause detrimental reliance. It is the absence of detrimental reliance, however, not the mere fact that the provision in question is a limitations period that should, if anything, support such a conclusion. In a situation such as the present one, where there is shown to be detrimental reliance following the waiver of a policy limitations period, the *Intel* rule must control. *See also* II *Farnsworth on Contracts* § 8.5, 378 (1990) (The insurer that chooses to engage in settlement negotiations despite the insured's *failure to give timely notice* of loss is likely to be precluded by its election from later resisting the claim on that ground. . . .) (emphasis added).

## IV. THE BAD FAITH CLAIM

### A. The Bad Faith Standard and A Brief Overview

■ An insurer's erroneous failure to pay benefits does not automatically constitute bad faith. "The ultimate test of [bad faith] liability in the first party cases is whether

the refusal to pay policy benefits was unreasonable." *Opsal v. U.S.A.A.*, 2 Cal.App.4th 1197, 1205, 10 Cal.Rptr.2d 352 (1991). This standard has been further explained: "bad faith liability cannot be imposed where there 'exist[s] a genuine issue as to [the insurer's] liability under California law." *Id.* at 1205–06, 10 Cal.Rptr.2d 352 (*citing Safeco Ins. Co. of America v. Guyton*, 692 F.2d 551, 557 (9th Cir.1982)).

■ Importantly, the question of whether Allstate's conduct in denying the claim was reasonable must be reviewed at the time that the allegedly "bad faith" decision was made. The court should not employ a 20–20 hindsight test, but instead the court must review the case law as it existed at the time the insurer acted. Equally important, even if the ultimate decision to deny coverage not made in bad faith, plaintiffs' claim for bad faith is not limited solely to Allstate's decision to deny coverage. Even should the court determine that there is a genuine issue as to the insurer's decision to deny coverage when it did in 1990, dismissal of the entire tort claim would not be appropriate. Instead, all the court would do is grant summary adjudication of the bad faith issue as it relates to Allstate's decision to deny coverage.

### B. The Court's Certification for Interlocutory Review

■ Defendant argues that the court has already found that there is "a genuine issue as to liability" in its certification for interlocutory review. Specifically, defendant relies on language in the order certifying interlocutory review which states that the court found that the waiver issue is a question "of law as to which there is a substantial basis for difference of opinion, and an immediate appeal from the order is likely to materially advance the ultimate termination of this litigation." Defendant concludes that the court's statement that there is a *substantial basis for a difference of opinion* disposes of any ques-

---

**12.** Again, *Garcia* has been depublished by order of the California Supreme Court. The reasoning of *Garcia*, however, was relied on by Allstate (at the court's invitation) and is also representative of other cases.

tions related to the reasonableness of Allstate's conduct.

For the reasons that follow, however, the court holds that defendant's reliance on the court's certification for interlocutory review is improper. Although the court takes full responsibility for the language in the prior order, the order was prepared by the parties. Moreover, the order simply used the "magic" language required by the Ninth Circuit for certification of interlocutory appeals. Having conducted the review at the time the certification was requested, the court is in the best position to determine the reliance, if any, that should be placed on the prior determination. Of note, the determination was made in a somewhat perfunctory manner, the court was influenced by other pertinent factors in agreeing to certify the petition (such as the fact that a contrary determination would resolve the case in its entirety), and the court did not take into account the collateral consequences that such a determination might have on plaintiffs. The simple fact is that the legal conclusion defendant wants to believe the court made earlier was not made by the court at that time.

Moreover, even if the court's prior ruling were to hold what defendant desires, as indicated previously, such a ruling is interlocutory in character and may be revisited prior to the entry of final judgment. *See* 1B *Moore's Federal Practice* §§ 0.404[1] and 0.404[4.–1] (1992). Given the consequences of this determination (namely dismissal of a portion of a claim), the court will review *de novo* the issue of whether there is a genuine dispute that would justify Allstate's conduct.

### C. There Is A Genuine Issue on Waiver of The Policy Limitations Period In This Instance

The primary issue presented is whether, at the time defendant denied coverage, there existed a genuine dispute under California law on the issue of whether or not there can be a waiver of the one-year policy limitation period after the limitations period had expired. In determining whether any dispute in fact was genuine, the court also examines whether Allstate's reliance on any dispute was reasonable.

### 1. Allstate's Conclusion that Law in 1990 Required Detrimental Reliance to Support Contention of Waiver

As indicated previously in this order, the court believes that Allstate misinterpreted the waiver doctrine. Although the court explained why it distinguished various cases cited by Allstate, *see infra*, the court cannot say that there was not a genuine dispute on this issue at the time Allstate made its decision to deny coverage, even in light of persuasive authority in major treatises and a basic understanding of the doctrine of waiver. It is unnecessary to rehash each of these opinions in detail. A case such as *Magnolia Square Homeowners Assn. v. Safeco Insurance Co.*, 221 Cal.App.3d 1049, 271 Cal.Rptr. 1 (1990), for example, represents the unfortunately all-too-regular confusion between the doctrines of waiver and estoppel. Although the court believes that a close and careful reading of *Magnolia Squares* suggests that the court only addressed an estoppel argument, the opinion is clearly ambiguous. *Id.* at 1063, 271 Cal.Rptr. 1. Standing alone, this case would not have warranted Allstate's denial of coverage. But the case is not alone. Indeed, in footnote five of *Prudential–LMI Com. Ins. v. Superior Court*, 51 Cal.3d 674, 274 Cal.Rptr. 387, 798 P.2d 1230 (1990), the California Supreme Court, in dicta, favorably referred to the argument made by amicus curiae that conduct by an insurer *after* a time limit has run "cannot, as a matter of law, amount to a waiver." *Id.* at 690 n. 5, 274 Cal.Rptr. 387, 798 P.2d 1230. The mere existence of the language, even as dicta, could be sufficient to protect Allstate from an allegation of bad faith. *See, e.g., Opsal v. U.S.A.A.*, 2 Cal.App.4th 1197, 1203, 10 Cal. Rptr.2d 352 (1991) (although court declined to follow dicta in footnote of California Supreme Court decision, the court felt "constrained to say the Supreme Court's footnote suggestion was not 'unreasonable' and provided 'proper cause' to support [defendant's] denial of coverage"). Moreover, Allstate also had federal cases such as *Becker v. State Farm Fire and Cas. Co.*, 664 F.Supp. 460, 461–62 (N.D.Cal.1987), and *Lally v. Allstate Ins. Co.*, 724 F.Supp. 760 (S.D.Cal.1989), af-

firmed, 930 F.2d 28 (9th Cir.1991), that clearly supported Allstate's position. Because these federal cases are not binding on California courts, they alone would not have provided a basis for Allstate's decision to deny coverage. Again, however, Allstate did not have any one of these cases alone. Instead, Allstate had all of these cases together.

Despite the abundance of authority to the contrary, especially in the carefully reasoned analyses that correctly distinguish between waiver and estoppel, Allstate did have before it several cases that taken together support the argument that, as a matter of law, there cannot be a waiver after the limitations period has expired. Given the contrary authority, none of Allstate's cases alone might be sufficient to justify Allstate's conduct in denying coverage. However, taken together, these cases (the confusion of *Magnolia Squares,* the dicta in the *Prudential–LMI* footnote, and the holding in the federal opinions of *Becker* and *Lally* ), require the finding that, at a minimum, it was not unreasonable for Allstate to decide that there could not be a waiver.

### 2. Subsequent Development of the Law Supports Finding that Allstate Reasonably Believed Waiver Required Detrimental Reliance

In addition to the review of the law at the time Allstate made its decision to deny coverage, the Ninth Circuit's opinion in *Intel* provides further support for the contention that there was, at a minimum, a genuine dispute in the law at the time Allstate made its decision. Because the court will not apply a "hindsight" test, the mere fact that subsequent cases, such as *Intel,* have held that Allstate's decision now represents the law does not automatically mean that the defendant's position was reasonable when taken at that time. Similarly, had *Intel* reached the completely opposite result, it would not automatically mean that Allstate's decision was unreasonable. At the same time, the fact that less than two years later a panel of the Ninth Circuit came to the same conclusion as Allstate lends support to Allstate's argument that it correctly interpreted an unfortunate trend in insurance law. Although this court continues to believe that both Allstate and the Ninth Circuit have misinterpreted the waiver doctrine in insurance cases, the proper focus of the bad faith claim is on whether there was a reasonable basis for the decision, not on whether the decision was correct.

### 3. Belief That There Had Not Been Detrimental Reliance Was Not Unreasonable

Recognizing that there was a genuine dispute on the issue of whether an insurance waiver requires detrimental reliance, the secondary issue is whether it was reasonable for Allstate to believe that there had not been such reliance. Notably, Allstate has not presented any evidence that it made such an inquiry or even considered the possibility that the passage of time and the change in law had prejudiced plaintiffs to their detriment. It is clear from Allstate's position that it generally did not believe such detriment to be present. Under the circumstances, the court cannot find such a belief to be unreasonable, although again, this order indicates that the court does find such a belief to be erroneous. Importantly, Allstate takes the position that *Intel* did not change the law, but merely restated the law as it had previously existed. The court does not believe this to be a correct statement of the development of waiver law in insurance cases, but it does comport with the position taken by *Intel.* Accordingly, the court holds that it was not unreasonable for Allstate to conclude that the law had not been changed, but instead had for some time refused to recognize the waiver doctrine in insurance cases. As a result, it was also not unreasonable for Allstate to believe that plaintiffs suffered no prejudice as a result of the denial of coverage. Despite the error of its ways, the law does not punish Allstate for such good faith beliefs. Accordingly, the court must grant Allstate's request for summary judgment on the bad faith claim, but only to the extent the claim relates to Allstate's ultimate denial of coverage.

### V. THE SCOPE OF DEFENDANT'S CONDUCT GOES BEYOND THE PRIOR INQUIRY

Even though the court has concluded that a genuine dispute existed on the issue

of whether there can be a waiver after the policy limitations period expired, such a ruling does not preclude a finding of bad faith entirely. Importantly, plaintiffs' complaint alleged such conduct as inadequate investigation of the claim, failure to attempt to reach a prompt, faithful and equitable settlement, unreasonable valuation of the loss, and failure to provide a prompt explanation for the denial. This list is not exhaustive of the allegations that remain, but illustrative of alleged conduct that occurred prior to the existence of a genuine dispute on the waiver issue, and certainly prior to Allstate's reliance on such a theory. For example, whether Allstate's offers made during the negotiation period were so unreasonably low that they constituted bad faith negotiations is an issue that is not resolved by the court's determination that Allstate began relying on a genuine dispute in law in 1990. As a result, even though the issue of waiver is sufficiently in dispute to excuse defendant's assertion of the defense *from the point in time that defendant relied on the dispute*, Allstate's negotiation conduct from 1985 to 1990 is not, as a matter of law, excused by the after-the-fact discovery of a genuine dispute.

▮ Importantly, the reasonableness rule that drives the good faith/bad faith analysis rests on the principle that where a defendant relies on a reasonable interpretation of the law, such conduct will not later be determined to be in bad faith. For example, in *Grüenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973), the California Supreme Court stated that where an insurer, in discharging its contractual duties, "fails to deal fairly and in good faith with its insured by refusing, *without proper cause*, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing." *Id.* at 574, 108 Cal.Rptr. 480, 510 P.2d 1032 (emphasis added). Restated, did the insurer have "proper cause" when it

made the decision to engage in the conduct in question? Specifically, the reasonableness of an insurer's conduct must be determined based on the basis of the information known to it at the time of denial. *See, e.g., Austero v. National Cas. Co.*, 84 Cal.App.3d 1, 32, 148 Cal.Rptr. 653 (1978) ("In evaluating the evidence to see if there was any unreasonable conduct by the [insurer], it is essential that no hindsight test be applied. The reasonable or unreasonable action by the [insurer] must be measured as of the time it was confronted with a factual situation to which it was called upon to respond.").

▮ If an insurer is attempting, albeit in error, to comply with the law, the insurer will not be found in bad faith. This analysis, however, is dramatically altered when there is no reliance on specific case law. For example, if an insurer purposely acted in bad faith (i.e., an insurer, without justification, intentionally refused coverage it believed was legitimate), the insurer's *intent* at the time the insurer acted does not magically change simply because of a later determination or belief that coverage was not in fact required. Such bad faith conduct cannot be excused by the discovery of a case that provides an insurer with an after-the-fact justification for the its prior behavior.[13]

Understandably, it may be difficult in many instances to prove such intent, especially when it is unclear what the insurer relied on in discharging its contractual obligations. And the court offers no opinion on whether plaintiffs can make such a showing in the instant case. It is clear, however, that Allstate did not rely on the "there can be no waiver as a matter of law" argument until some point in 1990. The court knows this partly because the cases Allstate relied on were not previously published (*Magnolia Squares* was published in 1990, *Prudential–LMI* was published in 1990, and *Lally* was published in 1989), and partly because of the court's review of the two coverage letters written in 1990. As there are allegations of

---

**13.** Notably, the court does not address the third question that the parties were ordered to brief. It would appear, however, that similar logic would suggest that there could be situations where an insured should be able to pursue a bad faith claim even when there would be no liability on the underlying contract claim. Specifically, after-the-fact excuses should not justify prior unreasonable behavior by an insurer. Because of the resolution of the first two questions on which the court ordered further briefing, it is unnecessary to definitively answer that question.

bad faith conduct prior to 1990, partial summary judgment cannot be granted on the issue of bad faith prior to Allstate's reliance on a genuine dispute of law in 1990.

### CONCLUSION

IT IS HEREBY ORDERED that even if plaintiffs are now required to prove detrimental reliance as explained in *Intel,* plaintiffs have shown sufficient detrimental reliance on Allstate's confirmation of coverage so that Allstate's conduct constitutes a waiver.

IT IS HEREBY FURTHER ORDERED that defendant Allstate's motion for partial summary adjudication is GRANTED in part. The court did not rely on its earlier certification of the waiver issue for interlocutory review, but instead conducted a complete review of the case law. This review requires the conclusion that at the time Allstate denied coverage in 1990, there was a genuine dispute on the issue of whether there can be a waiver of the policy limitations period after the period has expired. Accordingly, Allstate's denial was not unreasonable.

IT IS HEREBY FURTHER ORDERED that defendant Allstate's motion to dismiss the tort claim entirely is DENIED. Despite the existence of a genuine dispute on the waiver issue, plaintiffs' claim for bad faith should not be dismissed. Allstate did not rely upon this genuine issue of dispute until 1990, and accordingly, Allstate's prior conduct could have been in bad faith. As to this issue of whether Allstate's conduct prior to the denial of claim was in bad faith, there remains a factual dispute which cannot be resolved at this time.

**IT IS SO ORDERED.**