Lauro ACEVES, Jamie Aceves, Plaintiffs–Appellants, Cross–Appellees,

v.

ALLSTATE INSURANCE COMPANY, Defendant–Appellee, Cross–Appellant.

Nos. 94–55087, 94–55088.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 1995.

Decided Oct. 16, 1995.

George A. Foster, Kevin A. Carey, Schall, Boudreau & Gore, San Diego, California, for the plaintiffs-appellants-cross-appellees.

Charles A. Bird, Peter H. Klee, Charles A. Danaher, Luce, Forward, Hamilton & Scripps, San Diego, California, for the defendant-appellee-cross-appellant.

Before: FLETCHER, BRUNETTI, and T.G. NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

Lauro and Jamie Aceves (the Aceveses) appeal from a judgment against Allstate Insurance Company (Allstate) for its failure to pay a claim on their homeowners' policy. The Aceveses argue that the district court, after conducting a bench trial, understated their contract damages, overstated their liability for Allstate's costs, and gutted their bad faith claim by its evidentiary rulings at trial. Allstate cross-appeals from the district court's denial of summary judgment on their contract claim.

## I. Introduction

### A. *Facts*

The Aceveses' coverage claim arises as a result of structural damage to their house. In 1978, they bought a house in Bonita, California from the McMillin Construction Company. In 1981, they discovered a crack more than one-quarter inch wide, running longer than thirty feet of the length of a wall. They notified McMillin immediately and insisted that the damage was too serious to be patched. Although the Aceveses notified McMillin in 1981, they did not notify Allstate, their home insurer. Their homeowners' policy specified that they could only sue to enforce a coverage claim within one year of the loss giving rise to the claim.

In 1985, the structural damage to the Aceveses' house worsened; the initial crack widened and other cracks appeared. The Aceveses notified McMillin and soon after filed a lawsuit against it in propria persona. On August 12, 1985, they finally notified Allstate of the damage. Greg Martin, the adjuster who first processed the Aceveses' claim, set the date of the loss at September 30, 1983, to maximize the Aceveses' coverage under the different homeowners' policies they had from 1981 to 1985.

Martin made no mention of the one-year suit limitation when he first received the Aceveses' claim. Martin confirmed coverage orally in 1987 and the next adjuster to handle their claim reconfirmed coverage in a January 1988 letter. Neither raised the suit limitation.

It took Allstate five years to investigate the Aceveses' claim and negotiate with the Aceveses until it finally concluded that it could assert the suit limitation as a bar to their claim. In 1989, Joyce Almeida, another Allstate claims adjuster, took over the Aceveses' file. She was the first Allstate representative to consider that the Aceveses' claim might be time-barred. In December 1989, she referred their claim to outside counsel for a coverage opinion, analyzing in particular the suit limitation. On January 12, 1990, she received an opinion letter in response, advising her that Allstate had not waived the right to deny coverage because of the time bar, and that Allstate could deny coverage. Over the next seven months, she received other letters from the same attorney confirming this view, and communicated to Cannon, the Aceveses' attorney, that Allstate was considering denying their coverage.

On August 1, 1990, Allstate sent Cannon a letter denying the Aceveses coverage because they failed to file their claim within one year of discovering the loss giving rise to it. In February 1991, the Aceveses settled with McMillin for $90,000.

### B. *Proceedings below*

In March 1991, the Aceveses filed suit against Allstate in California Superior Court, alleging breach of contract and bad faith denial of coverage. In February 1992, Allstate removed the action to the United States District Court for the Southern District of California.

After removal, Allstate brought a motion for summary judgment, seeking a ruling of law that the one-year suit limitation precluded the Aceveses' contract and bad faith claims. The district court denied summary judgment on the contract claim, but granted

partial summary judgment on the bad faith claim. The district court later sua sponte ordered the parties to brief whether it should reconsider its decision in light of a Ninth Circuit case applying California insurance waiver law, *Intel Corp. v. Hartford Accident & Indemnity Co.*, 952 F.2d 1551 (9th Cir. 1991). In a published opinion, 827 F.Supp. 1473 (S.D.Cal.1993), the district court reconsidered and affirmed its previous ruling in light of *Intel*. *Id.* at 1487.

The contract claim and the remainder of the bad faith claim went to a bench trial. The district court made findings of fact and conclusions of law that Allstate had not acted in bad faith, that it was liable for $99,000 in damages on the insurance policy, but that its liability should be offset by the $90,000 settlement the Aceveses obtained from McMillin. Before trial, Allstate had made a settlement offer of $50,100 under California Code of Civil Procedure section 998(c). Because the $9,000 judgment was less than Allstate's pretrial settlement offer, the court ordered the Aceveses to pay Allstate's trial costs under section 998(c). These costs came to $9,625, including full fees for expert witness engineers, geotechnical consultants, and claims adjusters. The Aceveses appealed, and Allstate cross-appealed.

### C. *Issues on appeal*

We have jurisdiction over this appeal and cross-appeal under 28 U.S.C. § 1291. The Aceveses bring three issues on appeal. First, they argue that the district court erred in offsetting their $99,000 judgment against Allstate by the $90,000 settlement they obtained from McMillin. They concede that if they do not prevail on this issue, they owe Allstate costs under an offer of judgment rule. Their second claim is that the district court erred in applying state law instead of federal law to determine Allstate's costs. Last, they argue that the district court made several trial errors which require reversal of the court's judgment for Allstate on their bad faith claim. Allstate's cross-appeal presents a single issue: whether the district court erred when it denied Allstate summary judgment on the Aceveses' breach of contract claim.

### II. Allstate could not have waived the suit limitation

■ We begin with Allstate's cross-appeal. We review the district court's denial of summary judgment de novo. *Intel*, 952 F.2d at 1556. Because the Aceveses' suit was removed to federal court on the basis of diversity jurisdiction, California law governs the substantive issues of the case. *Id.* "We apply California law as we believe the California Supreme Court would apply it." *Id.* We conclude that the district court erred by denying Allstate summary judgment on the Aceveses' contract claim.

On the factual record before the court at the summary judgment stage, it was undisputed that the Aceveses' claim was time-barred. Their policy required them to sue to enforce a coverage claim within one year of their loss, they did not notify Allstate until four years after having discovered the damage to their house, and they did not sue until six years after giving notice. "[T]he one-year suit provision would, unless otherwise inapplicable or excused, bar [the Aceveses] from pursuing the present action." *Prudential–LMI Ins. Co. v. Superior Court (Lundberg)*, 51 Cal.3d 674, 687, 274 Cal.Rptr. 387, 395, 798 P.2d 1230, 1238 (1990).

The Aceveses raise only one possible ground for excuse: Allstate may have waived its right to deny on the basis of the one-year limitation. *See id.* at 690, 274 Cal.Rptr. at 397, 798 P.2d at 1240. They suggest that Allstate did so by its conduct from 1985 to 1989, particularly when it confirmed coverage in 1987 and 1988 without mentioning the time bar.

Under California law, Allstate could not have waived the one-year suit limitation. The California Supreme Court has observed that if an insurer extends the expiration date of a one-year suit provision for a claim that the insured filed and it began investigating *"after* the limitation has run[, the extension] cannot, as a matter of law, amount to a waiver." *Id.* at 690 n. 5, 274 Cal.Rptr. at 397 n. 5, 798 P.2d at 1240 n. 5. Waiver provides insurers with an incentive to investigate claims diligently. The doctrine prevents insurers from denying claims for one reason,

then coming forward with several other reasons after the insured defeats the first. *See Becker v. State Farm Fire and Casualty Co.,* 664 F.Supp. 460, 462 (N.D.Cal.1987); *see also Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 819, 169 Cal.Rptr. 691, 695–96, 620 P.2d 141, 145–46 (1979) ("[I]t is essential that an insurer fully inquire into possible bases that might support the insured's claim.... [A]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial.").

However, insurers need no incentive to investigate thoroughly exclusions like the suit limitation here. The facts of such an exclusion need no investigation—they are evident from the policy, the coverage claim, and the claim's date. *See Becker,* 664 F.Supp. at 462, *cited with approval in Prudential,* 51 Cal.3d at 690 n. 5, 274 Cal.Rptr. at 397 n. 5, 798 P.2d at 1240 n. 5. Thus, as a matter of law, Allstate could not have waived the one-year suit limitation.

■ The Aceveses argue that we should disregard the California Supreme Court's reasoning in *Prudential* as unreasoned obiter dictum. The district court declined to treat *Prudential* as controlling authority for this reason. 827 F.Supp. at 1482. We disagree. The district court, like us, is bound to follow the considered dicta as well as the holdings of the California Supreme Court when applying California law. *See Rocky Mountain Fire & Casualty Co. v. Dairyland Ins. Co.,* 452 F.2d 603, 603–04 (9th Cir.1971). Furthermore, since the district court issued its summary judgment ruling, a California Court of Appeal has treated the language in question from *Prudential* as good authority. *Alta Cal. Regional Ctr. v. Fremont Indem. Co.,* 25 Cal.App.4th 455, 468, 30 Cal.Rptr.2d 841, 848 (1994) (certified for publication in pertinent part).

The Aceveses also argue that we are bound by *Intel* and must apply its rule to reach the same conclusion as the district court, denial of summary judgment. (The district court reconsidered its first ruling on summary judgment in light of our holding in *Intel,* but affirmed the earlier ruling. 827 F.Supp. at 1488.) Although we agree that

*Intel* would bind us were we presented with the same issues, the critical issue in this case was not the critical issue in *Intel.* In *Intel,* we considered whether waiver in California insurance law required the insured to prove not only an element of waiver, but an element of estoppel as well. 952 F.2d at 1559. We concluded that the insured needed to establish both waiver and estoppel. *Id.* Because *Prudential* makes clear that the Aceveses cannot establish the waiver element necessary to excuse their failure to file before the time bar, it is irrelevant whether they can establish the estoppel element. Therefore, *Intel*'s holding does not control the outcome of this case.

We conclude that the district court erred when it interpreted California case law to hold that Allstate could waive the one-year suit limitation after the Aceveses failed to file a timely coverage claim. Because Allstate did not waive the limitation, the Aceveses had no right to sue on the insurance policy for breach of contract. We reverse the denial of summary judgment and remand for the district court to enter judgment in favor of Allstate on the Aceveses' contract claim. Since judgment for Allstate on the contract claim prevents the Aceveses from recovering any damages on that claim, it moots their claim on appeal that the district court determined their contract damages erroneously.

### III. Trial issues regarding the bad faith negotiation claim

#### A. *The nature of the bad faith theory to go to trial*

■ The Aceveses took two claims to trial—a breach of contract claim on the policy and what remained of their bad faith claim after the district court entered partial summary judgment on that claim. Our ruling that Allstate was entitled to summary judgment on the contractual claim does not require us to rule that it is entitled to judgment on the bad faith claim. Therefore, we still review the Aceveses' appeals from several trial rulings that excluded evidence of Allstate's bad faith. We review the court's evidentiary rulings for abuse of discretion and prejudice. *Roberts v. College of the Desert,*

870 F.2d 1411, 1418 (9th Cir.1988). To the extent that the district court applied California law to rule on these questions, we review its application of California law de novo. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991).

Before we consider the Aceveses' claims on appeal, however, we explain the precise nature of the bad faith claim that went to trial, a bad faith negotiation theory. When the district court ruled on Allstate's motion for summary judgment, it divided the Aceveses' bad faith claim into two separate theories. The first theory, bad faith denial, alleged that Allstate ultimately denied the Aceveses' coverage claim in bad faith in 1990. The district court granted summary judgment on this theory. 827 F.Supp. at 1486. The second, bad faith negotiation, alleged that Allstate stalled negotiations for five years from 1985 to 1990, until it could find a coverage opinion with a plausible legal reason why it could deny coverage. The district court denied summary judgment on this theory. *Id.* at 1486–88.

The district court held that Allstate was entitled to summary judgment on the bad faith denial theory because *Prudential, Becker,* and other cases gave Allstate a good faith basis to argue that the Aceveses' coverage claim was time-barred. *Id.* at 1485–86. However, the district court's ruling that Allstate did not deny the Aceveses' claim in bad faith still allowed the possibility that Allstate acted in bad faith in other respects. The ruling left open the possibility that Allstate might be liable for having negotiated in bad faith to stall a final settlement, until it could find a reason allowing it to argue in good faith that the Aceveses were not entitled to coverage: "Such bad faith conduct [could not have been] excused by the discovery of a case [namely, *Prudential,*] that provide[d Allstate] with an after-the-fact justification for its prior behavior." [1] *Id.* The district court described the cutoff date between Allstate's actions in furtherance of negotiation and its actions in furtherance of denial of the

Aceveses' coverage claim as the date when the company first relied on legal advice that the Aceveses' coverage claim was probably time-barred. *See id.* at 1487. The partial summary judgment ruling precluded the Aceveses from arguing at trial that Allstate denied them coverage unreasonably, but allowed them to prove that Allstate investigated the claim inadequately, stalled settlement negotiations, and undervalued the loss during negotiation from 1985 to 1990. *See id.* This distinction is central to the first set of evidentiary rulings that the Aceveses challenge.

**B.** *Any bad faith conduct by Allstate in 1990 was inadmissible*

■ The district court ruled after trial that Allstate did not negotiate in bad faith. The Aceveses argue that the court excluded their best evidence of Allstate's bad faith negotiation, the way in which Joyce Almeida, their adjuster from August 1989 until denial, handled their claim. They assert that she received a coverage letter in January 1990 opining that Allstate could not invoke the one-year suit limitation as a defense, but stalled negotiations to buy time for a more favorable coverage letter, which she received in July 1990. This evidence, they argue, would have constituted evidence that Allstate's representative negotiated in bad faith.

The district court excluded the evidence because it found that all of the acts alleged and attributed to Almeida occurred after the cutoff date. To be relevant to the bad faith negotiation theory rather than the bad faith denial theory, Almeida's conduct needed to have occurred before the cutoff date. *See* Fed.R.Evid. 401.

In determining the negotiation-denial cutoff date, the district court, consistent with its earlier grant of partial summary judgment, as affirmed on reconsideration, looked to when Allstate first began to rely on outside legal advice that it could legally deny the Aceveses coverage because of the one-year suit limitation. *See* 827 F.Supp. at 1487–88.

---

**1.** Judgment for Allstate on the contract claim does not eliminate the possibility that Allstate negotiated in bad faith until it discovered that it could rely on *Prudential* to deny coverage. Thus,

it was still correct to try the bad faith negotiation theory, even if it was error to try the contract claim. Allstate concedes this point in its final brief.

In other words, the relevance of Almeida's conduct to Allstate's bad faith negotiation depended on when Allstate first relied on the advice of counsel. *See* Fed.R.Evid. 104(b). Since the suit was tried without a jury, the district court made the factual determination as to when Allstate started to rely on advice about the suit limitation, and we review its finding for clear error. *See* Fed.R.Civ.P. 52(a).

The trial record indicates that Allstate first received the advice of counsel about the suit limitation on January 12, 1990. The outside counsel's letter advised that Allstate "has a very good chance of ultimately prevailing on the insureds' claim based on the one year policy limitation."[2] The district court did not clearly err when it determined that January 12, 1990, was the cutoff date between Allstate's bad faith negotiation conduct, on which the district court had denied summary judgment, and its bad faith denial conduct, on which it had granted summary judgment.

All of the Aceveses' evidence regarding Almeida's conduct falls on or after January 12, 1990. Thus, the district court did not abuse its discretion in excluding evidence along this line of inquiry as irrelevant to whether Allstate stalled negotiations with the Aceveses in bad faith until it could find a plausible reason to deny them coverage.

C. *Merely negligent conduct by Allstate could not show bad faith*

■ The Aceveses sought to introduce evidence of Allstate's negligent handling of their claim. They first sought to introduce evidence indicating that Allstate claims adjusters were inadequately trained to investigate earth movement claims. Later, they sought to establish a standard of care for adjusters for "maintaining an original claim file." Later still, they sought to establish a standard of care regarding responsiveness to settlement offers by the insured.

■ We conclude the district court did not abuse its discretion or misapply state law in excluding the evidence as irrelevant to the level of intent necessary to prove bad faith.

**2.** This is the opinion that, according to the Aceveses, gave Almeida and Allstate notice that

In California, mere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case. *National Life & Accident Ins. Co. v. Edwards,* 119 Cal.App.3d 326, 339, 174 Cal.Rptr. 31, 39 (1981). The district court found that all three pieces of testimony, had they been admitted, would have established either a negligence standard of care or suggested a breach of such a standard. The district court did not abuse its discretion in excluding the evidence as irrelevant.

D. *The district court understood the standard of care for a claims adjuster*

■ Last, the Aceveses sought to introduce evidence that the standard of care that Allstate claims adjusters owed to the Aceveses did not depend on whether they were represented by counsel. This evidence would have helped them show that Allstate's adjusters improperly withheld information that Allstate should have disclosed, and relied instead on the Aceveses' counsel to disclose it to them.

The district court held the adjuster to the correct standard of care. Allstate owed the Aceveses a duty of good faith and fair dealing, to settle their claim without injuring their right to receive the benefits of their policy. *See Egan,* 24 Cal.3d at 818, 169 Cal.Rptr. at 695, 620 P.2d at 145. The Aceveses' evidence would only be relevant if Allstate, to fulfill its duty, needed to disclose the same information to them irrespective of whether they were represented by counsel. California law is not entirely clear on whether Allstate's standard of care depended on the Aceveses' representation by counsel. In such situations, a federal court is bound to consider all the available data and use its best judgment to rule as it thinks the California Supreme Court would rule. *See State Farm Mut. Auto. Ins. Co. v. Davis,* 937 F.2d 1415, 1418 (9th Cir.1991), *appeal after remand,* 7 F.3d 180 (9th Cir.1993).

Allstate would *not* succeed if it denied the claim based on the one-year limitation.

We think the district court correctly interpreted the available data, California appellate court decisions and state insurance statutes, as indicating that the duty did vary. The California Insurance Code relieves insurers of certain duties during claim investigation and negotiation when the insured is represented by counsel. *See, e.g.,* Cal.Ins.Code §§ 2070.1 (requiring the insurer of a corrosive-soils loss to notify the insured thirty days before the expiration of the statute of limitations), 11580.2(k) (imposing the same duty on the insurer of an uninsured-motorist loss). There are also some circumstances in which an insured may not establish estoppel if represented by counsel, but may successfully prove estoppel if not represented. *See, e.g., Wilhelm v. Pray, Price, Williams & Russell,* 186 Cal.App.3d 1324, 1332, 231 Cal. Rptr. 355, 358 (1986). Under these circumstances, it was more prudent for the district court to predict that the California Supreme Court would not impose a fixed standard of conduct on insurers negotiating with represented and unrepresented insureds than to predict the opposite.

Having set the correct legal standard, the district court did not abuse its discretion in ruling the Aceveses' evidence was irrelevant. All the evidence the Aceveses sought to introduce would have shown that Allstate was less forthcoming to them after they hired an attorney. Allstate's conduct after the Aceveses retained counsel did not constitute a breach of its standard of care.

In short, we conclude the district court did not abuse its discretion in its ruling on all of the rejected evidence from which the Aceveses appeal. These appeals are the only challenges the Aceveses bring against the district court's post-trial findings and conclusions on the bad faith negotiation claim. We thus affirm this judgment by the district court.

### IV. Federal law should have determined Allstate's costs

Before trial, Allstate offered the Aceveses $50,100 to settle their action. The district court's judgment awarded the Aceveses $9,000. Because Allstate's pretrial settlement offer exceeded the Aceveses' judgment, the district court granted Allstate's motion to recover costs from the Aceveses and awarded Allstate $9,625 in costs.

The district court awarded Allstate costs under section 998(c) of the California Code of Civil Procedure. The Aceveses argue it was error for the district court to use state procedure instead of federal procedure to determine the amount of costs. We review the district court's choice of law de novo. *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss,* 991 F.2d 1501, 1505 (9th Cir.1993). We agree with the Aceveses that the district court should have applied federal law.

Federal and California law regarding offers of judgment are similar in that they both allow a defendant to recover costs if he makes a settlement offer before trial, the plaintiff refuses to settle, and the plaintiff obtains a trial judgment that is worth less than the settlement offer. *Compare* Fed. R.Civ.P. 68 *with* Cal.Code Civ.Proc. § 998(c). Thus, the choice of law does not affect Allstate's entitlement to costs. The Aceveses do not dispute that they owe costs.

Federal and California offer of judgment rules differ in the level of reimbursement for expert witness costs they allow. California law allows the defendant to recover expert witness fees in full. Cal. Code. Civ.Proc. § 998(c). Federal law allows the defendant to recover forty dollars per day per witness. 28 U.S.C. § 1821(b). A federal court may not exceed this limit without explicit statutory or contractual authorization. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). The court may not use other cost provisions like 28 U.S.C. § 1920 or Federal Rule of Civil Procedure 54(d) to circumvent section 1821(b). *Id.* at 442, 107 S.Ct. at 2497.

California law controls the substance of this lawsuit, but federal law controls the procedure by which the district court oversaw the litigation. *See Hanna v. Plumer,* 380 U.S. 460, 473, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965). Because reimbursement of expert witnesses fees is an issue of trial procedure, federal law should have controlled this costs issue, unless one of two factors indicated

otherwise. State procedure would only have applied if the pedigree of the federal rule could not be traced back to a federal statute or a Federal Rule of Civil Procedure, duly enacted pursuant to the Rules Enabling Act, *see id.* at 470–71, 85 S.Ct. at 1143, or if the federal rule created an incentive to shop for the federal forum, *see id.* at 467–68, 85 S.Ct. at 1141–42. *See also Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 914–15 (9th Cir.1985).

 Neither factor indicates that section 998(c) should control. We can find no indication that section 1821(b) of Title 28 has a suspect pedigree. More important, we think it exceedingly unlikely that section 1821(b) provides litigants an incentive to sue in or remove to federal courts. There may be unusual cases, some mass tort cases, for instance, in which litigation costs are so large and expert witness fees constitute so great a portion of litigation costs that section 1821(b)'s cost maximum is a significant incentive to litigate in federal court. However, in ordinary cases other factors, like impartiality and speed of the court system, determine the choice of forum, and we design the choice of law rule for the ordinary case, not a hypothetical one. Our conclusion, that federal law should control the reimbursement of expert witnesses in federal courts sitting in diversity jurisdiction, is in accord with the holdings of several other circuits. *Chaparral Resources, Inc. v. Monsanto Co.,* 849 F.2d 1286, 1291–92 (10th Cir.1988); *Kivi v. Nationwide Mut. Ins. Co.,* 695 F.2d 1285, 1289 (11th Cir.1983); *Bosse v. Litton Unit Handling Sys.,* 646 F.2d 689, 695 (1st Cir.1981).

Allstate offers two arguments in opposition to our conclusion, neither of which we find persuasive. First, Allstate argues that other federal courts have applied state offer of judgment statutes to award costs that the defendant could not have recovered under Rule 68. This argument presents a choice of law issue different from the one before us. The choice of law issue here is between state and federal expert witness cost provisions, not offer of judgment rules. *Tanker Management, Inc. v. Brunson,* 918 F.2d 1524 (11th Cir.1990), the one appellate case Allstate cites in support of its argument, proves

our point. The state and federal offer of judgment rules in that case were in "direct collision" because the state rule made attorneys fees compensable. *Id.* at 1528. In this case, the offer of judgment rules in question are not in direct collision, but the expert witness fee compensation rules are.

Second, Allstate argues that we are bound by our holding in *Meadows v. Bicrodyne Corp.,* 785 F.2d 670 (9th Cir.1986), in which we held that a district court did not abuse its discretion in awarding a party expert witness fees under section 998(c) of the California Code of Civil Procedure. *Id.* at 673. We did not inquire whether federal or state law governed the recovery of expert witness fees on the facts of that case. *See id.* Because *Meadows* did not address or decide the choice of law issue before us here, it does not control our resolution of this question.

We conclude that the district court should have applied 28 U.S.C. § 1821(b), not California Code of Civil Procedure § 998(c), when it determined the amount of Allstate's expert witness costs, we vacate the district court's order awarding $9,625 in costs to Allstate, and we remand for the district court to determine Allstate's costs consistent with section 1821(b).

## V. Conclusion

Because Allstate was entitled to summary judgment on the Aceveses' contract claim, we reverse the district court's denial of summary judgment and remand for the court to enter judgment in favor of Allstate on this claim. We dismiss as moot the Aceveses' appeal from the district court's ruling on their contract damage award. We affirm the district court's judgment in favor of Allstate on the Aceveses' bad faith claim. We vacate the district court's award of costs to Allstate and remand for further consideration consistent with section IV of this opinion.

AFFIRMED in part, REVERSED in part, VACATED in part, DISMISSED in part, and REMANDED.