**Robert MADDUX, Dennis Maddux, Donald Maddux, successors-in-interest of decedent Mary Manley–Caine, Plaintiffs,**

**v.**

**PHILADELPHIA LIFE INSURANCE COMPANY, Conseco, Inc., Christy Manley, Cheryll Grear, Carla Cooper, Defendants.**

No. 98–CV–0472 TW JAH.

United States District Court, S.D. California.

Dec. 1, 1999.

Richard P. Tricker, Thomas J. Kearney, Law Offices of Richard P. Tricker, P.C., Los Angeles, CA, for Defendant (Philadelphia Life Insurance Company).

David G. Ronquillo, Manuel Corrales, Jr., Ronquillo & Orderica, LLP, San Diego, CA, for Plaintiff (Robert Maddux, Dennis Maddux, Donald Maddux, successors-in-interest of decedent Mary Manley Caine).

## ORDER GRANTING PHILADELPHIA LIFE'S MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO BIFURCATE AS MOOT; DENYING MOTION TO ISSUE RULE 54(B) CERTIFICATION

WHELAN, District Judge.

Defendant, counterclaimant and third party plaintiff Philadelphia Life Insurance Company ("Philadelphia Life") moves for summary judgment, or alternatively partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs Robert Maddux, Dennis Maddux and Donald Maddux, (successors-in-interest to decedent Mary Manley Caine) ("Plaintiffs") oppose. All parties are represented by counsel. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1335, 1367. For the reasons expressed below, the Court GRANTS Philadelphia Life's motion for summary judgment.

## I. BACKGROUND

### A. OVERVIEW

On March 6, 1998 Plaintiffs commenced this action alleging claims sounding in breach of contract, breach of the implied covenant of good faith and fair dealing and fraud based on Philadelphia Life's refusal to pay Plaintiff Mary Manley Caine ("Caine") the proceeds of a $25,000 life insurance policy. The policy was issued by Philadelphia Life to Omer L. Manley ("Manley"), Policy No. 0080421510. Manley, Caine's former husband, was born in Oklahoma on January 27, 1925.

Philadelphia Life subsequently interpled the policy benefits pursuant to 28 U.S.C. § 1335. Notwithstanding the interpleader, however, the Court retained pendent and supplemental jurisdiction over Plaintiffs' contract and tort claims. Philadelphia Life now seeks summary judgment against those claims.

### B. THE MANLEY MARRIAGE, LIFE INSURANCE, DIVORCE

On January 16, 1989 Manley married Plaintiff Mary Caine ("Caine") in Sacramento, California. On July 25, 1990,while residing in Kansas, Manley applied for and received a $25,000 life insurance policy. Philadelphia Life's agent, Ken Thomas, also signed the application on the same date and at the same location. According to the application, "[a]ny policy issued on this application will be deemed to be delivered in and governed by the laws of the jurisdiction in which this application was signed." (See Pls.' Ex. 1). The application identified Caine as the primary beneficiary and Union National Bank as the contingent beneficiary. Philadelphia Life subsequently issued the policy on September 12, 1990.

Manley and Caine continued to reside in Kansas as husband and wife until mid–1993 when they separated. Caine moved back to California and Manley relocated to Oklahoma. In December 1993 Manley filed for divorce in Oklahoma. Caine did not contest the divorce, and signed a waiver of summons and entry of general appearance while she remained in California. On February 14, 1994 a divorce decree was entered in the District Court of Creek County in Oklahoma. According to the decree, Manley had resided in Oklahoma for more than six months preceding the initiation of his divorce petition. The decree also awarded Manley and Caine, as their separate property, all items in their respective possession. As to the policy, Oklahoma law provides "that in the event of divorce, the decedent's former spouse shall be treated for all purposes under the [insurance] contract as having predeceased the decedent." See 15 Okla. Stat. Ann. § 178.

After the divorce was final, Manley moved to Oregon and then to California where he died on March 29, 1997. Manley's death certificate listed his final residence as Sacramento, California. Manley's former wife Caine and his four daughters from a former marriage ("the Manley sisters") later asserted conflicting claims to the policy benefits.

### C. THIS ACTION

On February 5, 1998 Mary Caine filed this action in California Superior Court. On March 6, 1998 Philadelphia Life timely removed the action to federal court on the basis of diversity of citizenship.

On April 24, 1999 Plaintiff Mary Caine passed away. On July 20, 1999 Plaintiffs Robert Maddux, Dennis Maddux and Donald Maddux substituted into this action as Caine's successors-in-interest by filing a Second Amended Complaint alleging six claims against Philadelphia Life. The first claim alleges that Philadelphia Life breached the terms of the policy by failing to pay Caine the insurance proceeds. The second claim asserts that Philadelphia Life breached the implied covenant of good faith and fair dealing by withholding the insurance proceeds for an improper purpose. Plaintiffs' third claim alleges fraud based on Philadelphia Life's issuance of a policy it allegedly never intended to pay. Plaintiffs' fourth claim alleges a conspiracy between Philadelphia Life and the Manley

sisters. Plaintiffs' remaining claims seek declaratory relief, punitive damages and damages for emotional distress.

To resolve the competing claims to the insurance proceeds, Philadelphia Life deposited the policy benefits of $25,000 with the Court pursuant to 28 U.S.C. § 1335 naming Mary Caine and the Manley Sisters as parties to the interpleader action. By order dated January 22, 1999 the Court granted Philadelphia Life's motion for judgment in interpleader, finding that Philadelphia Life could properly interplead the insurance proceeds. Philadelphia Life now moves for summary judgment as to the remaining claims brought against it.

## II. *LEGAL STANDARD*

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court judgment must be denied and the court

need not consider the non-moving party's evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970).

However, once the moving party meets this initial burden, the non-moving party cannot defeat summary judgment by merely demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir.1995) (citing *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."). Rather, the non-moving party must "go beyond the pleadings and by her own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed. R.Civ.P. 56(e)).

When making this determination, all inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. *DISCUSSION*

Philadelphia Life seeks summary judgment against Plaintiffs' claims for breach of contract, breach of the implied covenant, fraud and conspiracy.

### A. *PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS AS A MATTER OF LAW*

Plaintiffs' first claim alleges that Philadelphia Life breached the terms of the

policy by failing to pay Caine the insurance proceeds. The terms of the policy at issue herein permitted the policyholder to change the beneficiary designation at any time "in written form satisfactory to the Company." (Policy at 6). It is undisputed that Caine was listed as the beneficiary at the time of death and that Manley never made any attempt to change Caine's status as the primary beneficiary.

■ The elements required for a cause of action for breach of contract are: (1) the existence of a contract, (2) plaintiffs' performance or excuse of nonperformance, (3) defendant's breach and (4) resulting damages to plaintiff. *Reichert v. General Ins. Co.*, 68 Cal.2d 822, 830, 69 Cal.Rptr. 321, 442 P.2d 377 (1968); *McDonald v. John P. Scripps Newspaper*, 210 Cal.App.3d 100, 104, 257 Cal.Rptr. 473 (1989). Philadelphia Life contends that Plaintiffs cannot prove the element of breach such that Plaintiffs' contract claim fails as a matter of law. For the reasons set forth below, the Court agrees.

### (1) COMPETING CLAIMS WERE SUBMITTED TO PHILADELPHIA LIFE

After Manley died in early 1997, Manley's four daughters ("the Manley Sisters") immediately submitted a claim for benefits on May 1, 1997. (Pls.' Ex. 7 at bates 0010). By letter dated May 20, 1997 Philadelphia Life responded to the Manley Sisters' request for benefits and advised them that Mary Caine was the primary named beneficiary on the policy. (Pls.' Ex. 7 at bates 0060). The Manley Sisters subsequently attempted to informally resolve the policy dispute with Caine.

On October 27, 1997, after these efforts failed, Caine submitted her own written claim for benefits under the policy. (Pls.' Ex. 7 at bates 0044). On January 7, 1998 Philadelphia Life advised Caine that the Manley Sisters were likewise seeking policy benefits and payment could not be made until Caine and the Manley Sisters came to an agreement between themselves. (Pls.' Ex. 7 at bates 0023). Caine responded that she needed the money immediately in light of her ongoing battle with cancer. (Pls.' Ex. 7 at bates 0004–0006).

### (2) DEFENDANT REASONABLY RELIED ON OKLAHOMA LAW

By letter dated January 29, 1998 Philadelphia Life informed Caine that it would pay the proceeds to the Manley Estate, explaining "your current relationship with the insured as former spouse disqualifies you as beneficiary on a life insurance policy unless it is specifically designated in the divorce decree." (Pls.' Ex. 7 at bates 0001). In taking this position, Philadelphia Life relied on *Oklahoma* law. Under the laws of Oklahoma, where Manley and Caine's divorce decree was entered, the law provides as follows:

If, after entering into a written contract in which a beneficiary is designated or provision is made for the payment of any death benefit (including life insurance contracts ) ... the party to the contract with the power to designate the beneficiary or to make provision for payment of any death benefit dies after being divorced from the person designated as the beneficiary or named to receive such death benefit, all provisions in the contract in favor of the decedent's former spouse are thereby revoked.... **In the event of either divorce or annulment, the decedent's former spouse shall be treated for all purposes under the [insurance] contract as having predeceased the decedent.**

Okla. Ann. Stat. Tit. 15, § 178(A) (emphasis added). Accordingly, if Oklahoma law were to apply—a former spouse (e.g. Caine) is deemed to have predeceased the insured (e.g. Manley) for purposes of administering life insurance proceeds payable after a prior divorce, extinguishing her right to collect the policy benefits.

### (3) APPLYING THE CORRECT STATE LAW

■ In response, Caine insists that Philadelphia Life breached the insurance

contract when it decided to not immediately pay Caine all benefits as the primary named beneficiary. With regard to the payment of benefits, the Policy states "[u]pon receipt by the Company . . . of due proof that the insured died . . . the company will *immediately* pay the proceeds to the beneficiary." (Policy at 1) (emphasis added). Plaintiffs further argue that the laws of *Kansas* required payment of all proceeds to Caine as the undisputed named beneficiary. Plaintiffs argue that the terms of the policy itself require that Kansas law apply.

■ It is undisputed that Manley signed and executed his insurance application in Manhatten, Kansas on July 25, 1990. The insurance application expressly stated "[a]ny policy issued on this application will be deemed to be delivered in and governed by the laws of the jurisdiction in which this application is signed." As such, Plaintiffs contend the laws of Kansas, not Oklahoma, applied to the disposition of the insurance proceeds. Under Kansas law, unless the terms of the policy dictate otherwise, the rights of the beneficiary under a life insurance policy are not affected by divorce. *Hollaway v. Selvidge,* 548 P.2d 835, 838 (Kan.1976) ("the general rule is that the rights of the beneficiary are in no way affected by the fact the parties are divorced subsequent to the issuance of the policy."); *Tromp v. Nat'l Reserve Life Ins. Co.,* 53 P.2d 831, 836 (Kan.1936) (same).[1] Plaintiffs thus argue that defendants' failure to follow the mandate of Kansas law breached the terms of the insurance contract because it is undisputed that Manley was located in the state of Kansas at the time he applied for the subject policy.

The Court rejects Plaintiffs' contention that Philadelphia Life acted deliberately or in bad faith by relying on Oklahoma law in denying benefits to Caine. Plaintiffs correctly note that, under Kansas law, "[s]pouses specifically named as beneficia-ries in life insurance policies remain beneficiaries after a divorce." *Lorence v. Farmers Alliance Mutual Ins. Co.,* 9 Kan. App.2d 112, 673 P.2d 460 (Kan.App.1983); *Hollaway,* 219 Kan. at 348, 548 P.2d at 838–39. The decisions Plaintiffs cite in their opposition, however, all involved cases where the divorce occurred *in Kansas.* None of those decisions confronted the implications of Full Faith and Credit on a divorce decree issued by a court located in another state.

As Philadelphia Life correctly notes, Full Faith and Credit significantly alters the analysis. The Kansas Supreme Court has held that "[a] judgment of divorce, including ancillary relief, rendered in conformity with the laws of one of our sister states, is entitled to full faith and credit in this state where the Court granting the judgment had personal jurisdiction over the parties and subject matter of the action." *Johnson v. Johnson,* 233 Kan. 198, 204, 662 P.2d 1178, 1182 (Kan.1983); *accord* K.S.A. § 60–1611. A Kansas state court, therefore, would be required to give the Oklahoma divorce decree the same preclusive effect it would receive in Oklahoma.

Here, the Oklahoma divorce judgment specifically granted Manley the complete right to all items in his possession and extinguished Caine's rights in any of Manley's property. (*See* Tricker Decl. Ex. A, at 25–26). Moreover, under Oklahoma statutory law the Manley–Caine divorce decree automatically revoked Caine's rights to collect life insurance benefits. *See* 15 Okl. St. Ann. § 178(A). A Kansas court could not find that Caine retained benefits under the life insurance policy without violating principles of Full Faith and Credit.

Therefore even accepting Plaintiffs' argument that the relevant choice-of-law rules required application of Kansas law,

---

**1.** Although not addressed by either party, the Court notes that even assuming Kansas law were to apply in this case, a Kansas court would nonetheless be bound by the Oklahoma court's divorce decree, and be compelled to give effect to the Oklahoma decree under the Full Faith and Credit Clause of the United States Constitution.

Philadelphia Life's conduct would nonetheless be reasonable as a matter of law.[2]

### (4) *INTERPLEADING THE FUNDS WAS REASONABLE & APPROPRIATE*

The Court further notes that Philadelphia Life never refused to pay the policy proceeds. Rather, by order dated January 22, 1999 Philadelphia Life secured a judgment in interpleader seeking to extract itself from the Manley Sisters' and Mary Caine's competing claim maelstrom. The federal interpleader statute is specifically designed to aid stakeholders such as Philadelphia Life to protect themselves against problems posed by multiple claimants to a single fund. *See* 28 U.S.C. § 1335 (expressly authorizing district courts to hear cases of two or more claimants of diverse citizenship who "are claiming or may claim to be entitled" to the money or property); *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).

### (5) *PHILADELPHIA LIFE DID NOT BREACH THE INSURANCE CONTRACT*

The Court finds that Philadelphia Life did not breach the insurance contract when it elected to not pay Caine the policy benefits despite her express designation as the primary beneficiary at the time of Manley's death. An insurer does not breach an insurance contract when it retains a good faith belief that it faces the possibility of competing claims and thereby interpleads the disputed funds with a court of law. *Minnesota Mut. Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999) (applying California law). For several reasons, no genuine issue of material fact exists as to whether Philadelphia Life maintained a good faith belief that it faced the possibility of competing claims when it interpled the $25,000 policy proceeds with this Court.

First, it is undisputed that Philadelphia Life was presented with competing claimants; the Manley Sisters and the decedent's former spouse Mary Caine both properly submitted claims to the proceeds. Second, Philadelphia Life maintained a good faith belief that either group of claimants could have been legitimately entitled to the proceeds. As noted above, there appears to be a direct conflict between Oklahoma and Kansas law (not to mention California law) on the issue of whether a former spouse, even when named as an express beneficiary, is entitled to insurance proceeds after divorce from the insured. If Oklahoma law applies, Caine would surely not recover any proceeds—but rather, the contingent beneficiary or Manley's Estate (e.g. the Manley Sisters) would gain access to the proceeds. On the other hand if Kansas law applies, Caine may in fact be entitled to all insurance proceeds. However, as noted above, the Court has concerns as to whether Kansas law is even applicable in light of the uncontested Oklahoma divorce decree, a final judgment entitled to Full Faith and Credit.

There are also direct and serious conflicts of interpretation within the terms of the insurance policy itself. In one section, the policy states that beneficiaries may only be changed by the policyholder in writing. (Policy at 6). However, another section of the policy states that a beneficiary deemed to have predeceased the insured causes the benefits to pass to parties other than the original beneficiary. (Policy at 6) ("If any beneficiary dies before the insured, that beneficiary's interest will pass to any surviving beneficiaries or contingent beneficiaries."). Finally, the policy indicates that the law of the state in which the application is signed and executed controls interpretation of the contract but then remains silent as to the issue of an insured's subsequent divorce in another jurisdiction.[3]

---

**2.** The Court's Full Faith and Credit discussion merely illustrates the reasonableness of Philadelphia Life's legal position. The Court makes no final determination as to whether the Manley sisters or Caine should be entitled to the benefits.

**3.** The Court likewise has concerns as to the enforceability of a choice of law provision

These multiple conflicts of law and contract interpretation, coupled with the competing claims of both the Manley Sisters and Mary Caine, convince the Court that Philadelphia Life satisfied its obligations under the insurance contract by resorting to an interpleader action. *Minnesota Mut. Life,* 174 F.3d at 981. Indeed, the Court cannot think of a case *more* appropriate for interpleader than this one: an insurance company facing legitimate claims from (i) two competing groups of claimants with direct or former familial ties to the deceased, (ii) regarding a marriage initiated in California, discontinued in Kansas and legally terminated in Oklahoma, and (iii) involving an insurance contract signed in Kansas and purportedly controlled by Kansas law that directly contradicts a Oklahoma divorce decree that was never contested by either party and is presumably entitled to Full Faith and Credit.

For all of these reasons, the Court finds that Philadelphia Life did not breach the insurance contract. Defendant's motion for summary judgment on Plaintiffs' breach of contract claim is therefore granted.

## B. *PLAINTIFFS' IMPLIED COVENANT CLAIM ALSO FAILS*

■ Having found that Philadelphia Life did not breach the insurance contract, Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing also fails. The Supreme Court of California has declared that "[i]t is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." *Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 574, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). In the case of insurance contracts, the California Supreme Court has determined that an insurer's bad faith breach of this covenant provides the basis for an action in tort. *See, e.g.,*

*California Fair Plan Ass'n v. Politi,* 220 Cal.App.3d 1612, 1618, 270 Cal.Rptr. 243 (1990) (citing *Crisci v. Security Ins. Co.,* 66 Cal.2d 425, 430, 58 Cal.Rptr. 13, 426 P.2d 173 (1967)).

■ It is well-established that an "erroneous denial of a claim does not alone support tort liability; instead, tort liability requires that the insurer be found to have withheld benefits unreasonably." *See, e.g., Tomaselli v. Transamerica Ins. Co.,* 25 Cal.App.4th 1269, 1280, 31 Cal.Rptr.2d 433 (1994) (citing *Opsal v. United Serv. Auto. Ass'n,* 2 Cal.App.4th 1197, 1205, 10 Cal. Rptr.2d 352 (1991)); *Austero v. National Cas. Co.,* 84 Cal.App.3d 1, 32, 148 Cal.Rptr. 653 (1978). In fact, "[t]he mistaken withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under California law, does not expose the insurer to bad faith liability." *Tomaselli,* 25 Cal.App.4th at 1280–81, 31 Cal.Rptr.2d 433 (citation omitted); *Dalrymple v. United Servs. Auto. Ass'n,* 40 Cal.App.4th 497, 523, 46 Cal. Rptr.2d 845 (1995) ("an insurer can erroneously dispute coverage without acting in bad faith").

"[M]ere negligence is not enough to constitute unreasonable behavior for the purpose of establishing a breach of the implied covenant of good faith and fair dealing in an insurance case." *Aceves v. Allstate Ins. Co.,* 68 F.3d 1160, 1166 (9th Cir.1995) (citing *National Life & Accident Ins. Co. v. Edwards,* 119 Cal.App.3d 326, 339, 174 Cal.Rptr. 31 (1981)). "While the reasonableness of an insurer's claims handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and but one inference can be drawn from the evidence." *Carlton v. St. Paul Mercury Ins. Co.,* 30 Cal.App.4th 1450, 1456, 36 Cal. Rptr.2d 229 (1994).

As previously discussed, Philadelphia Life's decision to interplead the disputed

that hinges only upon the physical location of the person signing the insurance application

for choice of law determinations.

insurance proceeds was made in a reasonable and good faith manner. It is undisputed that Philadelphia Life was facing competing claims from parties asserting contrary positions based on a variety of different laws and contract interpretations. Indeed, other courts have absolved insurance companies of implied covenant liability in situations involving acts far more reprehensible than those presented here. For example in *Safeco Ins. Co. v. Guyton*, 692 F.2d 551 (9th Cir.1982) (applying California law), the Ninth Circuit specifically held as a matter of law that a group of insurers could not be held liable for improperly denying claims in bad faith based upon their erroneous interpretation of the law as it applied to those claims. The court, despite concluding that the policyholders' losses were covered under the policy, nevertheless affirmed the dismissal of the policyholders' claims of bad faith. *Id.* at 557; *see also Hanson v. Prudential Ins. Co.*, 783 F.2d 762 (9th Cir.1985) (applying California law) ("Because Prudential's interpretation of the policy was not unreasonable, we conclude that Prudential's conduct did not rise to the level of bad faith."); *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217 (9th Cir. 1988) (applying California law) (refusing to find insurer acted in bad faith because denial of benefits, although incorrect, was not arbitrary or unreasonable).

Here, Philadelphia Life cannot be held liable for breach of the implied covenant of good faith when it acted in a reasonable and good faith manner on all accounts. They never refused to pay the policy benefits, rather, they simply could not determine precisely which claimant was entitled to the proceeds. In fact, Philadelphia Life's position that the Oklahoma divorce decree precluded the application of Kansas law was not only reasonable—it appears to have been correct. Defendant's motion for summary judgment is therefore granted as to Plaintiffs' implied covenant claim.

## C. *PLAINTIFFS' THIRD CLAIM FOR FRAUD ALSO FAILS*

Plaintiffs' third claim for relief is based on alleged fraud in connection with issuance of the policy to Manley. Specifically, Plaintiffs allege that Philadelphia Life misrepresented, concealed and/or falsely promised to pay Caine the policy benefits upon her husband's death so long as she was the named beneficiary. (P's Opp. at 21–24). Caine apparently accompanied her husband in the summer of 1990 when he applied for and purchased the insurance policy at a bank in Manhatten, Kansas. (Caine Depo. at 36–39) ("I sat there through[out] [the whole presentation]."). Caine testified that she personally saw her husband write her name as the beneficiary on the application. (*Id.* at 38). As to the alleged misrepresentations, Plaintiffs claim that Philadelphia Life misrepresented that it would unconditionally pay Caine the policy benefits upon Manley's death. With regard to the alleged concealment, Plaintiffs allege that Philadelphia Life had some undisclosed intent to not pay Caine the proceeds. Finally, as to the alleged false promises, Plaintiffs claim that Philadelphia Life's mishandling of the claim after Manley's death clearly suggests an intent to not pay the benefits since issuance of the Policy in 1990. Because no benefits were ever paid to Caine, Plaintiffs contend they maintain a valid claim for fraud.

"The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th 951, 973, 64 Cal. Rptr.2d 843, 938 P.2d 903 (1997); Cal. Civ.Code §§ 1709, 1710. All of these elements must be present for actionable fraud to be found, and one missing element is fatal to recovery. *Okun v. Morton*, 203

Cal.App.3d 805, 828, 250 Cal.Rptr. 220 (1988).

■ The Court finds that Plaintiffs cannot, as a matter of law, establish several of the essential elements for fraud. First, Plaintiffs cannot establish that statements in Philadelphia Life's life insurance contracts were knowingly false *at the time they were made.* It is undisputed that the February 1994 Manley–Caine Oklahoma divorce decree did not issue until over three years *after* the issuance of the September 1990 life insurance policy. Plaintiffs have presented no evidence suggesting that Philadelphia Life could have anticipated-in September 1990–that the couple would separate and enter into an Oklahoma divorce decree in February 1994 that would eliminate Plaintiffs' rights under the policy. Plaintiffs simply have presented no evidence to establish either the element of falsity or intent.

Second, the Court finds that Caine lacks standing to assert a claim for fraud. A plaintiff may not generally maintain an action for fraud unless plaintiff was the person to whom the alleged misrepresentations were directed. *Pulver v. Avco Financial Services,* 182 Cal.App.3d 622, 640, 227 Cal.Rptr. 491 (1986) ("In other words, the plaintiff is the person to whom the misrepresentation must have been made, and it is the plaintiff who must have relied on the misrepresentation to his damage."). There is no evidence that Philadelphia Life's alleged assurances were ever communicated directly to Caine or that Caine directly relied on the statements or terms contained in the life insurance policy. Although Caine was apparently present at the time her husband purchased the insurance policy, there is no evidence that she even read or understood the policy terms. *See generally Hadland v. NN Investors Life Ins. Co.,* 24 Cal.App.4th 1578, 30 Cal. Rptr.2d 88 (1994) (noting that clear and conspicuous provisions in an insurance policy are enforceable even if evidence suggests the provisions were not read or understood). In the same regard, there is no evidence that Caine personally paid the policy premiums or that she ever raised the subject of how the policy was to be distributed during the Oklahoma divorce proceedings. (*See* Caine Depo. at 41–42) ("A: Well, I would notice the letters, yes. Q: And you understood that they were *billing him* for a premium? A: Yes.") (emphasis added).

Finally, the Court notes that it has already determined that Philadelphia Life did not breach the covenant of good faith and fair dealing by failing to pay benefits to Caine. As discussed previously, Philadelphia Life acted reasonably in determining that a legitimate dispute existed between rival claim holders and that interpleading the funds was the most appropriate course of action. Philadelphia Life's refusal to pay Caine benefits was, considering the undisputed facts before the Court, properly based on Philadelphia's reliance on the Oklahoma divorce decree and related laws that apparently stripped Caine of her rights as a named beneficiary.

### D. *PLAINTIFFS' CONSPIRACY CLAIM FAILS AS A MATTER OF LAW*

■ In their fourth claim for relief, Plaintiffs allege that Philadelphia Life and the Manley Sisters "conspired" to deprive Caine of all policy benefits. "The elements of a civil conspiracy are '(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting...'" *Mosier v. Southern California Physicians Ins. Exch.,* 63 Cal.App.4th 1022, 74 Cal. Rptr.2d 550 (1998) (quoting *Unruh v. Truck Ins. Exch.,* 7 Cal.3d 616, 631, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972)); *Moore v. Brewster,* 96 F.3d 1240, 1245 (9th Cir.1996). "Although conspiracy to commit a tort is not a separate cause of action from the tort itself, alleging a conspiracy fastens liability on those who agree to the plan to commit the wrong as well as those who actually carry it out." *Saunders v. Superior Court,* 27 Cal.App.4th 832, 845–

46, 33 Cal.Rptr.2d 438 (1994). "The requisite concurrence and knowledge may be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances... Tacit consent as well as express approval will suffice." *Wyatt v. Union Mortgage Co.*, 24 Cal.3d 773, 785, 157 Cal.Rptr. 392, 598 P.2d 45 (1979) (internal quotations and citations omitted).

■■■ The Court has reviewed the evidence submitted by Plaintiffs, including the letters between the Manley sisters, Caine, and Philadelphia Life. None of this correspondence even suggests an agreement between the Manley sisters to conspire with Philadelphia Life. Thus, the Court cannot infer that the Manley sisters conspired with Philadelphia Life because there are no facts from which such an inference reasonably could be drawn. *See, e.g., Nelson v. Pima Community College*, 83 F.3d 1075, 1081–82 (9th Cir.1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Neely v. St. Paul Fire and Marine Insurance Co.*, 584 F.2d 341, 346 (9th Cir.1978) (summary judgment properly granted against plaintiff where fact finder would have to rely "upon surmise and speculation."); *DeHorney v. Bank of America Nat. Trust and Sav.*, 879 F.2d 459, 464 (9th Cir.1989) (once moving party demonstrates that it is entitled to summary judgment, non-moving party must come forward with "specific facts, and not allegations, to show that a genuine factual issue remains for trial.").

Moreover, the Court has already found that Philadelphia Life did not act unreasonably in not paying Caine the life insurance benefits and as the Court noted in its January 1999 order, "[s]ince the date of Omer Manley's death, Philadelphia Life has been ready, willing, and able to pay the policy benefits to the rightful beneficiary or beneficiaries." (*See* Order Granting Request for Judgement in Interpleader at 3). Likewise, the Court shall not penalize Philadelphia Life for its good faith suggestion in January 1998 that the competing claimants try and resolve their differences between themselves in order to avoid costly litigation. Philadelphia Life's efforts to avoid costly litigation can hardly be called a conspiracy. Finally, Plaintiffs' conspiracy claims must fail because there is no evidence of any wrongful conduct in furtherance of the alleged conspiracy.

In conclusion, because Defendants have successfully demonstrated Plaintiffs' inability to produce evidence of civil conspiracy—summary judgment is properly granted against this claim. *Celotex Corp.*, 477 U.S. 317, 323, 106 S.Ct. at 2552–53.

### E. *DECLARATORY RELIEF NOT WARRANTED*

In their fifth cause of action, Plaintiffs seek a declaration as to whether they are entitled to the benefits under the policy. Recognizing that the Court has already granted Philadelphia Life's request for a judgment in interpleader, Philadelphia Life has no interest in or further obligation regarding the disputed proceeds. As such, Philadelphia Life is not a proper party to Plaintiffs' claim for declaratory relief and is entitled to summary judgment on the fifth cause of action.

### F. *PLAINTIFFS' REMAINING REQUESTS FOR PUNITIVE AND/OR EMOTIONAL DISTRESS DAMAGES ALL FAIL AS A MATTER OF LAW*

Plaintiffs also request an award of punitive damages. Under California law, when a defendant "has been [found] guilty of oppression, fraud, or malice," the Court may award punitive damages. Cal. Civ. Code § 3294. "Malice" is defined as "conduct which is intended to cause injury to the plaintiff" or "despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Id.* § 3294(c)(1). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious

disregard of that person's rights." *Id.* § 3294(c)(2).

Having read and considered the papers submitted, the Court holds that Philadelphia Life is entitled to summary judgment against Plaintiffs' prayer for punitive damages. As previously noted, Plaintiffs have failed to establish that Philadelphia Life should be held liable for breaching the life insurance contract, breaching the implied covenant of good faith and fair dealing, committing fraud or entering into a civil conspiracy. Similarly, there is no evidence, let alone clear and convincing evidence, to support a finding that Philadelphia Life acted with "oppression, fraud or malice" so as to justify an award of punitive damages. Cal. Civ.Code § 3294.

The Court also finds that Philadelphia Life's conduct in investigating and later interpleading the policy proceeds did not constitute the type of "despicable conduct" Section 3294 is intended to punish. The Court rejects Plaintiffs' suggestion that evidence of Philadelphia Life's wrongful handling of claims is supported by allegations that Philadelphia Life mishandled claims filed by beneficiaries outside this litigation. None of this evidence alters the assessment of how Plaintiffs' claim in *this* case was actually handled. Because Plaintiffs' have failed to establish unreasonable conduct, it necessarily follows that they have also failed to establish despicable conduct to secure punitive damages. At minimum, Plaintiffs have failed to carry their burden of presenting clear and convincing evidence of despicable conduct that would support such an award. *See Mock v. Michigan Millers Mutual Insurance Co.,* 4 Cal.App.4th 306, 331, 5 Cal.Rptr.2d 594 (1992). Plaintiffs' allegations seeking punitive damages therefore fail as a matter of law and summary judgment is granted thereon.

For the same reasons, Plaintiffs' recovery of emotional distress damages is expressly barred by California's survival statute. Plaintiffs present no authority to overcome the long-established rule that "[e]motional distress damages are within the definition of pain and suffering damages and do not survive the death of a decedent under the California survival statute [C.C.P. 377.34]." *Ambruster v. Monument 3: Realty Fund VIII Ltd.,* 963 F.Supp. 862, 864–65 (N.D.Cal.1997) (citing *Neal v. Farmers Insurance Exchange,* 21 Cal.3d 910, 920 n. 3, 148 Cal.Rptr. 389, 582 P.2d 980 (1978)). Summary judgment is therefore granted on Plaintiffs' emotional and/or mental distress claims.

## IV. CONCLUSION AND ORDER

In light of the foregoing, the court **GRANTS** Philadelphia Life's motion for summary judgment in its entirety. Philadelphia Life's alternative motion to bifurcate under Rule 42 is **DENIED** as moot. Philadelphia Life's final request for Rule 54(b) certification of the interpleader judgment is **DENIED** for failure to properly establish reasons why such certification should be issued.[4]

**IT IS SO ORDERED.**

---

**4.** *See Morrison–Knudsen Co. v. Archer,* 655 F.2d 962, 965, (9th Cir.1981) (holding that Rule 54(b) certification order should contain specific findings setting forth reasons for certification).